IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 1, 2013 Session in Knoxville

**DERRICK BRANDON BUSH v. STATE OF TENNESSEE**

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Sumner County**
**No. 308-2011     Dee David Gay, Judge**

**No. M2011-02133-SC-R11-PC - Filed January 28, 2014**

This appeal concerns the retroactive application of *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010), in which this Court held that trial courts have an affirmative duty, before accepting a guilty plea to a crime carrying a mandatory sentence of community supervision for life, to inform the defendant desiring to plead guilty of the consequence of lifetime supervision. In April 2011, a prisoner, who pleaded guilty to two counts of attempted rape in December 2000, filed a petition for post-conviction relief in the Criminal Court for Sumner County alleging that his guilty pleas were not knowingly or intelligently entered because he had not been informed that he would be subject to lifetime community supervision following his release from prison. The trial court decided that the Post-Conviction Procedure Act's statute of limitations should be tolled on due process grounds and that the prisoner was entitled to post-conviction relief because *Ward v. State* should be applied retroactively. The Court of Criminal Appeals reversed, finding no grounds for due process tolling and that *Ward v. State* did not announce a new rule of constitutional law requiring retroactive application. *Bush v. State*, No. M2011-02133-CCA-R3-PC, 2012 WL 2308280 (Tenn. Crim. App. June 15, 2012). We granted the prisoner's appeal to clarify the standards governing retroactive application of this Court's authoritative interpretations of the Tennessee Constitution and to resolve related issues in the interpretation of the Post-Conviction Procedure Act. In accordance with the retroactivity framework for post-conviction proceedings the Tennessee General Assembly codified in Tenn. Code Ann. § 40-30-122 (2012), we have determined that our holding in *Ward v. State* does not require retroactive application and, therefore, that the prisoner is not entitled to tolling under Tenn. Code Ann. § 40-30-102(b)(1) (2012). We also hold that the prisoner's case does not warrant due process tolling. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined.

Branden Bellar, Carthage, Tennessee, for the appellant, Derrick Brandon Bush.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; John H. Bledsoe, Senior Counsel; L. Ray Whitley, District Attorney General; Sallie Wade Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.

On December 4, 2000, eighteen-year-old Derrick Brandon Bush pleaded guilty to two counts of attempted rape in the Criminal Court for Sumner County. The written plea agreement reflected Mr. Bush's understanding (1) that each count carried a minimum penalty of three years and a maximum penalty of six years, (2) that, if his plea was accepted by the trial court, the sentence for each count would be four years, (3) that the sentences would be served consecutively, resulting in an effective sentence of eight years, (4) that he would serve one year in the Sumner County jail, and (5) that he would serve the remaining seven years on "state probation."

During the submission hearing, both the prosecutor and the trial court described Mr. Bush's sentence as "an effective eight-year sentence." When the trial court asked Mr. Bush, "So what is the effective sentence that you're getting here today?" Mr. Bush answered, "Eight years." Accepting Mr. Bush's guilty plea, the trial court declared:

> [T]he agreed sentence on each of those [counts] will be four years. They will be consecutive to each other for an eight-year sentence, one year in jail, the balance on probation, and I have gone over with you those conditions. You may not appeal from this.

No mention was made during the hearing that, by pleading guilty to attempted rape, Mr. Bush would be subject to community supervision for life in accordance with Tenn. Code Ann. § 39-13-524(a)(3) (2010 & Supp. 2013).

Thereafter, the State prepared the judgment documents relating to Mr. Bush's December 4, 2000 guilty pleas and submitted them to the trial court for approval and signature. The line for the signature of Mr. Bush's lawyer was left blank, and the record does

not reflect that either Mr. Bush or his attorney participated in preparing the judgments or that they were even aware of their contents. The judgment form for count one, filed on December 11, 2000, stated that Mr. Bush would be placed on "lifetime supervision upon release."

Mr. Bush did not learn that he had been placed on community supervision for life until sometime after he had been released from custody. He did not immediately challenge this additional restraint after he learned about it.

Years passed, and on July 7, 2010, this Court filed its opinion in *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010). We held in *Ward* that a sentence to lifetime community supervision "is a direct and punitive consequence of a plea of guilty to the crimes enumerated in Tennessee Code Annotated section 39-13-524(a)." *Ward v. State*, 315 S.W.3d at 476. We also held that "trial courts have an affirmative duty to ensure that a defendant is informed and aware of the lifetime supervision requirement prior to accepting a guilty plea." *Ward v. State*, 315 S.W.3d at 476.

We recognized this duty because it preserves the integrity of plea bargains in Tennessee courts and prevents violations of the constitutional right to due process by ensuring that any plea represents a defendant's voluntary and knowing choice between the essential terms of the plea agreement and a contested trial. *Ward v. State*, 315 S.W.3d at 476; *see also State v. Nagele*, 353 S.W.3d 112 (Tenn. 2011) (permitting a defendant to withdraw his guilty plea on the grounds of a *Ward* violation); *Calvert v. State*, 342 S.W.3d 477 (Tenn. 2011) (permitting a defendant to withdraw his guilty plea on the grounds of ineffective assistance of counsel when counsel failed to inform the defendant of lifetime community supervision).

On April 25, 2011, Mr. Bush filed a pro se petition for relief under the Post-Conviction Procedure Act.[1] The Act permits a state prisoner to seek relief from a "conviction or sentence [that] is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103.

"Time is of the essence" when pursuing relief under the Post-Conviction Procedure Act. Tenn. Code Ann. § 40-30-102(a). Accordingly, prisoners seeking post-conviction relief must file their petitions within one year from the date on which the judgment of conviction becomes final or from the date of the last state court action on direct appeal. Tenn. Code Ann. § 40-30-102(a).

---

[1]Tenn. Code. Ann. §§ 40-30-101 to -122 (2012 & Supp. 2013).

However, the General Assembly has provided three express exceptions to this statute of limitations. The first of these exceptions permits post-conviction courts to consider an untimely petition for post-conviction relief when

> [t]he claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial.

Tenn. Code Ann. § 40-30-102(b)(1). With regard to this exception, Tenn. Code Ann. § 40-30-122 states that "[a] new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule . . . requires the observance of fairness safeguards that are implicit in the concept of ordered liberty." We will return to Tenn. Code Ann. § 40-30-122 later in the opinion.

In his post-conviction petition, Mr. Bush characterized *Ward v. State*'s holding as a new rule of constitutional criminal law requiring retroactive application. He also asserted that his guilty plea in 2000 was not voluntary or knowing because he was not aware that he would be subject to community supervision for life. In the alternative, Mr. Bush argued that the Post-Conviction Procedure Act's one-year statute of limitations should be tolled on due process grounds.

The post-conviction court held an evidentiary hearing on September 8, 2011. At the conclusion of the hearing, the court found that: (1) "the fact that the defendant was required to be on supervision for life was never, ever revealed to the defendant by his attorney," (2) "during the submission hearing the fact that he would be on supervision for life was not mentioned," and (3) "lifetime supervision on release was added [to the judgment], but it is also clear that the defendant never, ever saw this provision." Based on these findings, the trial court determined that the statute of limitations should be tolled on due process grounds and that Mr. Bush's guilty plea was not voluntary and knowing because "[t]he Defendant was not informed of the mandatory requirement for Community Supervision for Life."

The State appealed, and the Court of Criminal Appeals reversed the post-conviction court's judgment. *Bush v. State*, No. M2011-02133-CCA-R3-PC, 2012 WL 2308280, at *11 (Tenn. Crim. App. June 15, 2012). The appellate court concluded that Mr. Bush did not

qualify for due process tolling of the statute of limitations. *Bush v. State*, 2012 WL 2308280, at *9-10.

The Court of Criminal Appeals also determined that our holding in *Ward v. State* did not require retroactive application even though it announced a new rule of constitutional law. In conducting its retroactivity analysis, the appellate court attempted unsuccessfully to reconcile the "differing statutory and common law approaches" to retroactivity. *Bush v. State*, 2012 WL 2308280, at *3. Accordingly, the appellate court analyzed the retroactive application of *Ward v. State* using two different frameworks. The first approach was based on Tenn. Code Ann. § 40-30-122. The second approach was based on *Meadows v. State*, 849 S.W.2d 748, 755 (Tenn. 1993). Ultimately, the Court of Criminal Appeals decided that neither approach required that *Ward v. State* be applied retroactively. *Bush v. State*, 2012 WL 2308280, at *9.

We granted Mr. Bush's Tenn. R. App. P. 11 application for permission to appeal to address the confusion noted by the Court of Criminal Appeals regarding retroactivity determinations in post-conviction proceedings. Arguably, the retroactive effect of a constitutional ruling is a purely judicial question. Nevertheless, in the limited context of post-conviction proceedings, we recognize that the General Assembly has adopted a retroactivity standard that is codified at Tenn. Code Ann. § 40-30-122. Although this Court previously adopted a different retroactivity standard, we now instruct Tennessee's courts to use Tenn. Code Ann. § 40-30-122 to determine whether criminal procedural rulings emanating from the Constitution of Tennessee apply retroactively to post-conviction petitioners. Applying Tenn. Code Ann. § 40-30-122's retroactivity standard, we have determined that our holding in *Ward v. State* does not require retroactive application. We also find that Mr. Bush's case does not warrant due process tolling of the post-conviction statute of limitations.

In the remainder of this opinion, we will (1) discuss our holding in *Ward v. State*; (2) briefly explore the history of the retroactivity of new constitutional rules and the origin of Tennessee's two retroactivity standards; (3) explain the standard that shall apply to future cases; (4) apply that retroactivity standard to our decision in *Ward v. State*; and then (5) determine whether Mr. Bush's case warrants due process tolling of the post-conviction statute of limitations.

## II.

The case of Marcus Ward is very similar to Mr. Bush's case. On June 8, 2005, Marcus Ward pleaded guilty to a variety of charges that included one count of aggravated sexual battery. Under Tennessee law, a person convicted of this crime must be placed on the

internet sex offender registry and receive a mandatory "sentence of community supervision for life." Tenn. Code Ann. §§ 39-13-524 to -526 (2010 & Supp. 2013); 40-39-201 to -215 (2012 & Supp. 2013).[2] However, the trial court did not tell Mr. Ward that his plea would result in these two consequences. On July 11, 2005, Mr. Ward filed a timely petition for post-conviction relief. He alleged that his plea was not "knowing and voluntary" because he was not aware of the plea's full consequences. The trial court decided that the sex offender registry and lifetime community supervision were "collateral" consequences of the plea, rather than "punitive" and "direct" consequences, and that Mr. Ward was therefore not entitled to relief. *Ward v. State*, 315 S.W.3d at 464.

In our analysis of Mr. Ward's case, we noted that when a defendant enters a guilty plea, he or she waives several constitutional rights, including the right against self-incrimination, the right to a trial by jury, and the right to confront his or her accusers. To pass constitutional muster under the Due Process Clause of the United States Constitution, a guilty plea must be entered knowingly, voluntarily, and intelligently. To meet this standard, a plea must represent a voluntary and intelligent choice among the available alternatives. *Ward v. State*, 315 S.W.3d at 465.

We also explained that a plea is not voluntary unless the defendant understands the consequences of the plea and that a plea is not voluntary if it results from ignorance, misunderstanding, coercion, inducements, or threats. Thus, we explained that the record of a plea colloquy must affirmatively demonstrate that the defendant was aware of the significant consequences of the plea. Otherwise, the plea would not amount to an "intentional abandonment of a known right." Accordingly, we held that the trial court must discuss the consequences of the plea with the defendant to ensure the defendant "has a full understanding of what the plea connotes and of its consequences." *Ward v. State*, 315 S.W.3d at 465-66.

While registration as a sex offender is a collateral consequence of a conviction, we held that a mandatory sentence of lifetime community supervision was a direct and punitive consequence of Mr. Ward's guilty plea. We explained why lifetime supervision is a more grievous sanction than "collateral" consequences such as sex offender registration and a defendant's parole requirements. We also explained that lifetime community supervision is "punitive in effect," because it requires the defendant

---

[2]We note the possibility that "community supervision for life" could potentially end after fifteen years. According to Tenn. Code Ann. § 39-13-525 (2010), "[a]fter a person sentenced to community supervision pursuant to [Tenn. Code Ann.] § 39-13-524 has been on supervision for a period of fifteen (15) years, the person may petition the sentencing court for release from community supervision."

to regularly report to a parole officer who is granted wide discretion in imposing supervisory requirements, and to pay a monthly fee. The imposition of lifetime supervision and the attendant consequences placed on an individual after having served his or her entire sentence of incarceration and/or regular parole are significant.

*Ward v. State*, 315 S.W.3d at 474. Because "lifetime supervision imposes an additional set of restrictions and requirements on the offender *after* serving his or her entire sentence of incarceration," we found that "postrelease supervision is a significant, punitive component of [a] defendant's sentence." *Ward v. State*, 315 S.W.3d at 475-76 (quoting *People v. Goss*, 733 N.Y.S.2d 310, 314 (App. Div. 2001)).

We note at this juncture that Mr. Bush's plea colloquy suffered from the same defects as Mr. Ward's. The post-conviction court found that (1) "the fact that the defendant was required to be on supervision for life was never, ever revealed to the defendant by his attorney," (2) "during the submission hearing the fact that he would be on supervision for life was not mentioned," and (3) "lifetime supervision on release was added [to the judgment], but it is also clear that the defendant never, ever saw this provision." Appellate courts are bound by the post-conviction court's underlying findings of fact unless the evidence preponderates against them. *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013); *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009). The State does not challenge these findings. The inescapable conclusion is that when Mr. Bush pleaded guilty, he was ignorant of the true sentence that would be imposed, and his constitutional right to due process of law was violated by the acceptance of this "involuntary" plea.

The difference between Mr. Bush's case and Mr. Ward's case is a difference in timing. Mr. Ward sought post-conviction relief one month after he was sentenced. Mr. Bush did not petition for relief until almost ten years after the judgment against him was finalized. Mr. Bush did, however, file his petition less than one year after we decided *Ward*. Under Tennessee's Post-Conviction Procedure Act, no court may consider Mr. Bush's late petition unless *Ward* announced a new rule of constitutional criminal procedure that requires retroactive application. Tenn. Code Ann. § 40-30-102(b)(1). Accordingly we will now address the background and contours of the retroactivity of new constitutional rules.

## III.

The United States Supreme Court fashioned the doctrines governing the retroactivity of new constitutional rules in the context of federal habeas corpus challenges to the constitutionality of criminal convictions in state courts. During the Twentieth Century, the

-7-

federal courts recognized or established many rules of constitutional criminal procedure and routinely applied these rules retroactively to state prisoners seeking federal habeas corpus review of their convictions.

The Court eventually decided that, in many circumstances, collateral review of state criminal convictions would be better left to the state courts.[3]  Therefore, beginning in 1965, the Court began to narrow the scope of habeas corpus review based largely on concerns relating to "comity, federalism, and finality of judgment."[4]  One of the ways the Court narrowed the scope of federal habeas corpus review was to modify the principles governing the retroactivity of new constitutional rules.

In *Linkletter v. Walker*, 381 U.S. 618 (1965), the Court determined for the first time that, although new constitutional criminal rules should always apply retroactively to cases on direct review, they need not necessarily apply retroactively to all cases on collateral review.  Deciding that its prior practice of universal retroactivity was not based on anything in the Constitution, the Court held that "the Constitution neither prohibits nor requires retrospective effect. . . . 'We think the Federal Constitution has no voice upon the subject.'" *Linkletter v. Walker*, 381 U.S. at 629 (quoting *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932)).  Accordingly, the Court adopted a multifactor test for determining which rules of constitutional criminal procedure should apply retroactively to cases on collateral habeas corpus review.[5]

The watershed case on the federal retroactivity doctrine is *Teague v. Lane*, 489 U.S. 288 (1989), in which the Court announced the current federal standard.  In *Teague v. Lane*, an all-white jury convicted an African-American defendant of three counts of attempted murder and other related crimes.  Over Mr. Teague's objections, the prosecutor used all ten of his peremptory challenges to strike potential jurors who were African-American.  The Illinois state courts upheld the conviction, and Mr. Teague filed a petition for writ of habeas

---

[3]*See generally* Mary C. Hutton, *Retroactivity in the States: The Impact of* Teague v. Lane *on State Postconviction Remedies*, 44 Ala. L. Rev. 421 (1993).

[4]Max Rosenn, *The Great Writ-A Reflection of Societal Change*, 44 Ohio St. L.J., 337, 364 (1983).

[5]The *Linkletter* Court framed its retroactivity test as follows:

Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.

*Linkletter v. Walker*, 381 U.S. at 629.

corpus in the United States District Court. *Teague v. Lane*, 489 U.S. at 292-93. In his petition, Mr. Teague relied on the recent decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), that provided greater opportunities for criminal defendants to challenge the type of discriminatory jury selection practices that allegedly tainted his trial.

When *Teague v. Lane* reached the United States Supreme Court, the Court declined to hold Illinois to the standard it had announced in *Batson v. Kentucky*, based on considerations of federalism and comity. Instead, the Court announced a new, narrower federal retroactivity standard that preserved a high degree of deference to the states. The Court both defined which rules should be considered "new," and which new rules warranted retroactive application. The Court described a new rule as follows:

> It is admittedly often difficult to determine when a case announces a new rule, and we do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes. In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Teague v. Lane*, 489 U.S. at 301 (citations omitted). The Court also limited the retroactive scope of "new" constitutional rules by holding:

> First, a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. Second, a new rule should be applied retroactively if it requires the observance of those procedures that are implicit in the concept of ordered liberty.

*Teague v. Lane*, 489 U.S. at 307 (internal quotation marks and citations omitted).

In addition, the Court explained that procedures that are "implicit in the concept of ordered liberty" should be understood as "watershed rules of criminal procedure" or "those new procedures without which the likelihood of an accurate conviction is seriously diminished." The Court believed it was "unlikely that many such components of basic due process have yet to emerge." *Teague v. Lane*, 498 U.S. at 312, 313. We will return to "the concept of ordered liberty" later in this opinion.

-9-

Accordingly, *Teague v. Lane* replaced the prior standard for determining retroactivity in federal habeas corpus review of state convictions with a standard that grants significant deference to state courts. In other words, *Teague v. Lane* stands most clearly for the proposition that federal habeas corpus courts should grant relief only when state courts refuse to honor clearly-established rights provided by the United States Constitution or federal law. *See, e.g.*, Richard H. Fallon Jr. & Daniel J. Meltzer, *New Law, Non-Retroactivity, and Constitutional Remedies*, 104 Harv. L. Rev. 1731, 1816 (1991).

Almost twenty years after the *Teague v. Lane* decision, the United States Supreme Court emphasized in *Danforth v. Minnesota*, 552 U.S. 264 (2008), that the retroactivity rule in *Teague v. Lane* was not binding on state courts. The Court explained that the retroactivity test was binding only on federal courts conducting habeas corpus review of state convictions, *Danforth v. Minnesota*, 552 U.S. at 277-81, and then added:

> [T]he remedy a state court chooses to provide its citizens for violations of the Federal Constitution is primarily a question of state law. Federal law simply sets certain minimum requirements that States must meet but may exceed in providing appropriate relief. [The federal retroactivity precedents] provide no support for the proposition that federal law places a limit on state authority to provide remedies for federal constitutional violations.

*Danforth v. Minnesota*, 552 U.S. at 288 (internal quotation marks and citations omitted).

## IV.

This Court never adopted the *Linkletter* standard or the *Teague* standard. In fact, in *Meadows v. State*, 849 S.W.2d 748 (Tenn. 1993), this Court explicitly overruled the trial court's decision to apply the *Teague* standard to a Tennessee decision. We clarified that Tennessee has its own test for the retroactivity of new constitutional rules.

The question in *Meadows v. State* was whether the rule we announced in *State v. Jacumin*, 778 S.W.2d 430 (Tenn. 1989), should apply retroactively to post-conviction petitioners. While the Post-Conviction Procedure Act lacked an express retroactivity provision prior to 1995, the Act specified that persons seeking post-conviction relief could obtain relief based on a violation of a constitutional right "that was not recognized as existing at the time of trial if either constitution requires retrospective application of that right." Tenn. Code Ann. § 40-30-105 (1990).

In *State v. Jacumin*, we decided that Tennessee courts would no longer follow the federal courts' treatment of informants under the Fourth Amendment. We noted that other states had decided that the federal standard described in *Illinois v. Gates*, 462 U.S. 213 (1983), had become "unacceptably shapeless and permissive" and "nebulous." *State v. Jacumin*, 778 S.W.2d at 435-36 (quoting *Commonwealth v. Upton*, 476 N.E.2d 548, 556 (Mass. 1985); *State v. Jackson*, 688 P.2d 136, 139 (Wash. 1984)). We clarified that Tennessee adheres to a pre-*Gates* standard that required a greater quantum of corroboration to establish probable cause to obtain a warrant when the warrant is based on information provided by an informant. *State v. Jacumin*, 778 S.W.2d at 434-36.

Mr. Meadows's drug convictions had been upheld under the *Illinois v. Gates* standard. He petitioned for post-conviction relief, asking that his case be re-evaluated under *State v. Jacumin*. *Meadows v. State*, 849 S.W.2d at 749-50. Accordingly, the Court was called upon to decide whether *Jacumin* announced a new rule that required "retrospective application."

The Court first determined that *State v. Jacumin* announced a new rule. For this question, the Court wholeheartedly adopted the language from *Teague v. Lane*, 489 U.S. at 301, that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Meadows v. State*, 849 S.W.2d at 751 (citations omitted). Because the Court of Criminal Appeals had previously applied the *Illinois v. Gates* standard in nine cases, our decision in *Meadows v. State* to abandon the *Gates* standard was clearly a result "not dictated by precedent." *Meadows v. State*, 849 S.W.2d at 751-53. The more difficult question was whether *State v. Jacumin*'s new rule required retroactive application.

The Court observed that prior to 1965, courts applied all new constitutional rules of criminal procedure retroactively, but that this changed after the United States Supreme Court decided *Linkletter v. Walker*, 381 U.S. 618 (1965). This Court also noted that the federal retroactivity analysis had "changed substantially" as a result of *Teague v. Lane*. *Meadows v. State*, 849 S.W.2d at 753. We pointed out that under *Teague v. Lane*, that

> a new rule of federal constitutional law will not be given retroactive application to cases on collateral review unless (1) the rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe, or (2) the rule requires the observance of procedures implicit in the concept of ordered liberty.

-11-

*Meadows v. State*, 849 S.W.2d at 754 (citing *Teague v. Lane*, 489 U.S. at 307).

At this point, the Court made two seminal observations.  First, the Court stated that "states are bound by federal retroactivity analysis when a new federal rule is involved." *Meadows v. State*, 849 S.W.2d at 754.[6]  Second, the Court stated that "it is well established that state courts are free to determine what retroactive effect will be accorded pronouncements of state law" *Meadows v. State*, 849 S.W.2d at 754.  "When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." *Meadows v. State*, 849 S.W.2d at 754 (quoting *American Trucking Associations, Inc. v. Smith*, 496 U.S. 167, 177 (1990)).  While this Court recognized that several states had "assimilated the *Teague* standard" into their own state jurisprudence (and others operated under the older *Linkletter* standard), we declined to do so.  We clarified Tennessee's rule as follows:

> [W]e have stated that newly announced state constitutional rules will be given retroactive application to cases which are still in the trial or appellate process at the time such rules are announced, unless some compelling reason exists for not so doing. *State v. Robbins*, 519 S.W.2d 799, 800 (Tenn. 1975).  In post-conviction proceedings, we have considered retroactive application necessary when the new state rule enhances the integrity and reliability of the fact finding process of the trial. *Hellard v. State*, 629 S.W.2d 4, 5 (Tenn. 1982).  Stated another way, we have held retroactive application necessary when the old rule substantially impairs the truth-finding function of the trial and thereby raises serious questions about the accuracy of guilty verdicts in past trials. *Id*. at 7.  After carefully considering the issue and the shifting sand of federal retroactivity analysis, we conclude that the prior decisions of this Court set forth the appropriate standard for determining the retroactive effect of new state constitutional pronouncements.  Accordingly, we decline to apply the federal standard of retroactivity announced in *Teague v. Lane* . . . and hold that a new state constitutional rule is to be retroactively applied to a claim for post-conviction relief if the new rule materially

---

[6]As we have already noted, this interpretation of the federal precedents eventually proved to be incorrect. *Danforth v. Minnesota*, 552 U.S. at 288.  Thus, in contrast to what this Court assumed in *Meadows v. State*, the states are not "bound by federal retroactivity analysis when a new federal rule is involved."

> enhances the integrity and reliability of the fact finding process
> of the trial.

*Meadows v. State*, 849 S.W.2d at 754-55 (footnote omitted). Applying this standard, we determined that *Jacumin* did not warrant retroactive application. *Meadows v. State*, 849 S.W.2d at 755.

However, *Meadows* was not the end of the story. Two years after this Court decided *Meadows v. State*, the General Assembly enacted a new version of the Post-Conviction Procedure Act.[7] The new Act was designed to hasten the final resolution of criminal appeals. Accordingly, the Act included a strict one-year statute of limitations for filing a petition for post-conviction relief. *See* Tenn. Code Ann. § 40-30-102(a); *Whitehead v. State*, 402 S.W.3d at 622.

To offset the harshness of the one-year deadline, the Act also contained three exceptions to toll the statute of limitations or to permit a prisoner to re-open a previously filed petition. Tenn. Code Ann. § 40-30-102(b) (grounds for tolling the limitations period); Tenn. Code Ann. § 40-30-117(a) (grounds for a motion to reopen). In this case, Mr. Bush invokes Tenn. Code Ann. § 40-30-102(b)(1), which provides an exception to the one-year filing deadline when

> [t]he claim in the petition is based upon a final ruling of an
> appellate court establishing a constitutional right that was not
> recognized as existing at the time of trial, if retrospective
> application of that right is required. The petition must be filed
> within one (1) year of the ruling of the highest state appellate
> court or the United States supreme court establishing a
> constitutional right that was not recognized as existing at the
> time of trial.

Under this provision, if *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010), established a new right requiring retrospective application, then Mr. Bush's post-conviction petition would be timely.

Tenn. Code Ann. § 40-30-102(b), however, does not stand alone. A related provision, Tenn. Code Ann. § 40-30-122, states:

> For purposes of this part, a new rule of constitutional criminal
> law is announced if the result is not dictated by precedent

---

[7]*See* Act of Apr. 26, 1995, ch. 207, 1995 Tenn. Pub. Acts 305.

existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds. A new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or requires the observance of fairness safeguards that are implicit in the concept of ordered liberty.

This Court has not squarely addressed whether Tenn. Code Ann. § 40-30-122 abrogated our decision in *Meadows v. State* to continue applying the "materially enhances the integrity and reliability" standard to determine the retroactivity of new constitutional rules in Tennessee. But this Court came close to doing so in 2001.

In *Van Tran v. State*, this Court announced a new rule that executing an intellectually disabled prisoner violates the Cruel and Unusual Punishments Clause of Tenn. Const. art I, § 16. This Court then considered whether that rule should apply retroactively. *Van Tran v. State*, 66 S.W.3d 790, 810-11 (Tenn. 2001). We observed:

The United States Supreme Court has said that a new rule of federal constitutional law is to be applied in cases on collateral review only if it (1) places certain kinds of primary, private individual conduct beyond the power of the state to proscribe or (2) requires the observance of procedures implicit in the concept of ordered liberty. *Teague v. Lane*, 489 U.S. at 307, 109 S. Ct. at 1073. We have adopted a somewhat different standard in Tennessee: "a new state constitutional rule is to be retroactively applied to a claim for post-conviction relief if the new rule materially enhances the integrity and reliability of the fact finding process of the trial." *Meadows v. State*, 849 S.W.2d at 755; *see also* Tenn. Code Ann. § 40-30-[122] (citing the *Teague* standard for retroactivity).

*Van Tran v. State*, 66 S.W.3d at 811. This Court then applied the *Meadows v. State* standard and held that the rule announced in *Van Tran v. State* should be applied retroactively because the prohibition on executing intellectually disabled defendants "materially enhances the integrity and reliability of the fact finding process of the trial." *Van Tran v. State*, 66 S.W.3d at 811.

-14-

We note at this juncture that the outcome of *Van Tran* would have been the same even if this Court had applied the *Teague* standard. After the United States Supreme Court determined that executing intellectually disabled prisoners violates the federal constitution in *Atkins v. Virginia*, 536 U.S. 304 (2002), federal courts applying the *Teague* standard determined that this ruling applied retroactively to state habeas corpus petitioners. *See, e.g.*, *Hill v. Anderson*, 300 F.3d 679, 681 (6th Cir. 2002).

*Van Tran* thus left the question unresolved whether Tennessee post-conviction courts should apply the retroactivity standard in *Meadows v. State* or Tenn. Code Ann. § 40-30-122. Faced with this conundrum in this case, the Court of Criminal Appeals decided to analyze *Ward v. State* under both retroactivity standards. *Bush v. State*, 2012 WL 2308280, at *4-9. We owe it to the bench and bar to squarely decide the issue.

The choice between the retroactivity standard in *Meadows v. State* and Tenn. Code Ann. § 40-30-122 requires us to strike an appropriate balance between two important principles. The first principle is that the availability and scope of post-conviction relief lies within the discretion of the General Assembly because post-conviction relief is entirely a creature of statute. *Pike v. State*, 164 S.W.3d 257, 262 (Tenn. 2005). The second principle is that determining the retroactivity of new constitutional rules is customarily a judicial function.

Because Tenn. Code Ann. § 40-30-122 provides retroactivity principles applicable to post-conviction petitions, the choice between *Meadows v. State* and Tenn. Code Ann. § 40-30-122 implicates the separation of powers in Article 1, Sections 1 and 2 of the Constitution of Tennessee. Only this Court has the authority to oversee the practice and procedure in Tennessee's courts. *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, ___ S.W.3d ___, 2013 WL 4430909, at *6 (Tenn. 2013) (quoting *State v. Mallard*, 40 S.W.3d 477, 480-81 (Tenn. 2001)). However, even though this Court is "supreme in fact as well as in name"[8] when it comes to Tennessee's courts, our commitment to cooperation among the three branches of government has prompted us to acquiesce in and to apply statutes affecting the operation of the courts when they do not interfere with the courts' adjudicative functions or otherwise impermissibly encroach on the Judicial Branch. *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 2013 WL 4430909, at *6 (quoting *Lynch v. City of Jellico*, 205 S.W.3d 384, 393 (Tenn. 2006)).

We recognize our obligation to protect the independence of Tennessee's courts. *State v. Mallard*, 10 S.W.3d at 482 (quoting *Anderson Cnty. Quarterly Court v. Judges of the 29th*

_____

[8]*Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 2013 WL 4430909, at *6 (quoting *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976)).

*Judicial Circuit*, 579 S.W.2d 875, 878 (Tenn. Ct. App. 1978)). However, because Tenn. Code Ann. § 40-30-122 is an integral part of a purely statutory remedy created by the General Assembly and because its reach does not extend beyond the Post-Conviction Procedure Act, we hold that the retroactivity of new constitutional rules in post-conviction proceedings should henceforth be determined using Tenn. Code Ann. § 40-30-122.

## V.

Having decided that Tenn. Code Ann. § 40-30-122 governs the retroactive effect of Tennessee appellate decisions to post-conviction petitioners, we now turn to the case at hand. First, we will assess the retroactivity of our decision in *Ward v. State*. Second, we will determine whether Mr. Bush is entitled to due process tolling of his post-conviction deadline.

Whether *Ward v. State* requires retroactive application is a question of law that warrants no deference to the decisions of the courts below. *State v. White*, 362 S.W.3d at 565. The question of whether the post-conviction statute of limitations should be tolled is a mixed question of law and fact that is likewise subject to de novo review. *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011).

Under Tenn. Code Ann. § 40-30-102(b)(1), we must answer two questions to determine whether our holding in *Ward v. State* triggered a new one-year statute of limitations for Mr. Bush. The first question is the "new rule" question; the second is the "retrospective application" question.

## A.

Tenn. Code Ann. § 40-30-102(b)(1) permits a prisoner to file a petition beyond the one-year deadline if, first, "[t]he claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial." Tenn. Code Ann. § 40-30-122 states: "For purposes of this part, a new rule of constitutional criminal law is announced if the result is not dictated by precedent existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds."

We find that *Ward v. State* announced a new rule of constitutional criminal procedure. The parties and the Court of Criminal Appeals agree on this point. As the Court of Criminal Appeals pointed out, the *Ward v. State* case resulted in a split decision by the Court of Criminal Appeals, and this Court ultimately reversed the majority decision. Thus, *Ward v. State*'s decisional history demonstrates that the *Ward v. State* ruling was subject to debate and was certainly not dictated by precedent. *Bush v. State*, 2012 WL 2308280, at *4 (citing

-16-

*Ward v. State*, No. W2007-01632-CCA-R3-PC, 2009 WL 113236, at *9-11 (Tenn. Crim. App. Jan. 14, 2009)). Thus, the first requirement of Tenn. Code Ann. § 40-30-102(b)(1) has been met.

**B.**

The second requirement for triggering the Post-Conviction Procedure Act's tolling provision is that "retrospective application" of the new rule is "required." Tenn. Code Ann. § 40-30-102(b)(1). Tenn. Code Ann. § 40-30-122 states that a new rule of constitutional criminal law can be applied retroactively only if "the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or if the new rule "requires the observance of fairness safeguards that are implicit in the concept of ordered liberty."

The rule of *Ward v. State* was not a rule that "places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Tenn. Code Ann. § 40-30-122. Examples of this type of rule include *Lawrence v. Texas*, 539 U.S. 558 (2003), in which the United States Supreme Court held that states could not criminalize homosexual intercourse between consenting adults, and *Roe v. Wade*, 410 U.S. 113 (1992), in which the United States Supreme Court held that states could not in most cases criminally penalize doctors for performing early-term abortions. Our *Ward* decision does not fall into this category.

Thus, this case hinges on whether *Ward v. State* announced a rule that "requires the observance of fairness safeguards that are implicit in the concept of ordered liberty." This is a question of statutory interpretation. As we have said many times:

> Our role in construing a statute is to ascertain and give effect to the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope. We begin by focusing on the statute's words, presuming that each word has its own meaning and purpose. If the language is clear and unambiguous, we need look no further. When faced with ambiguous language, however, we may refer to the broader statutory scheme, the legislative history, and other sources, including the established canons of statutory construction

*State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013) (internal citations omitted); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526-28 (Tenn. 2010). We must therefore begin by

focusing on the phrase "fairness safeguards that are implicit in the concept of ordered liberty."

The words "fairness safeguards" are clear enough. "Safeguards" in this context refers to criminal procedural rules designed to guard against defendants being denied their due process right to a fundamentally fair adjudication of guilt. Due process itself "embodies the concepts of fundamental fairness," justice, and "the community's sense of fair play and decency." *Whitehead v. State*, 402 S.W.3d at 623 (quoting *Seals v. State*, 23 S.W.3d 272, 277 (Tenn. 2000); *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). The rule of *Ward v. State* clearly constitutes a procedural "safeguard" derived from due process notions of "fairness."

More difficult to parse is the phrase "implicit in the concept of ordered liberty." This limiting phrase implies that not all constitutionally-derived "fairness safeguards" warrant retroactive application in post-conviction cases. As for the word "implicit," relevant definitions include "[i]mplied though not plainly expressed; naturally or necessarily involved in, or capable of being inferred from, something else."[9]

"Ordered liberty" is something of a legal term of art with a long history. *See generally* David Crump, *How Do the Courts Really Discover Unenumerated Fundamental Rights? Cataloguing the Methods of Judicial Alchemy*, 19 Harv. J.L. & Pub. Pol'y 795, 871-74 (1996) (describing the history of the phrase). The phrase currently appears in 122 opinions by the United States Supreme Court. Its first legal use appears in Justice Cardozo's opinion in *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), *overruled by Benton v. Maryland*, 395 U.S. 784 (1969).

The "ordered liberty" idiom first appeared in the context of the United States Supreme Court's efforts to determine which of the rights explicitly protected in the Bill of Rights were "incorporated" or "absorbed" into the Due Process Clause of the Fourteenth Amendment and were thereby binding on the states. The Supreme Court, adopting a selective approach to incorporation, decided that while all constitutional rights are important, only those rights that are "the very essence of a scheme of ordered liberty" should be binding on the states through the Fourteenth Amendment. *Palko v. Connecticut*, 302 U.S. at 325. The Court noted that these rights reflect "principle[s] of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" such that "a fair and enlightened system of justice would be impossible without them." *Palko v. Connecticut*, 302 U.S. at 325.

---

[9] 7 Oxford English Dictionary 724 (2d ed. 1989).

The "ordered liberty" language next appeared in the context of the United States Supreme Court's adoption of newly recognized, non-textual substantive rights derived from the Due Process Clauses of the Fifth and Fourteenth Amendments. The Court described these rights as being "implicit in the concept of ordered liberty" and explained that they were "deeply rooted in this Nation's history and tradition" in the sense that they involve "the basic values that underlie our society." *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 503 (1977); *see also* Ronald J. Krotoszynski, Jr., *Dumbo's Feather: An Examination and Critique of the Supreme Court's Use, Misuse, and Abuse of Tradition in Protecting Fundamental Rights*, 48 Wm. & Mary L. Rev. 923, 946 (2006) (stating that since 1968, "Anglo-American legal traditions," rather than the "implicit in the concept of ordered liberty" inquiry have "set the metes and bounds" of the Court's substantive due process analysis).

Finally, the United States Supreme Court gradually imported the "ordered liberty" concept into its decisions involving the retroactivity of new constitutional rules in federal habeas corpus cases. The retroactivity standard the Court adopted in *Teague v. Lane*, 489 U.S. 288, 307, 310 (1989), was taken from Justice Harlan's separate opinion in *Mackey v. United States*, 401 U.S. 667, 693 (1971) (Harlan, J., concurring and dissenting).[10] However, the Court in *Teague v. Lane* explained that the procedures the Court would deem "implicit in the concept of ordered liberty" were limited to "watershed rules of criminal procedure" or "those new procedures without which the likelihood of an accurate conviction is seriously diminished," few of which the Court believed were likely to emerge. *Teague v. Lane*, 489 U.S. at 313.

As this Court has previously recognized, the retroactivity standard of Tenn. Code Ann. § 40-30-122 is similar to the federal standard of *Teague v. Lane. See Van Tran v. State*, 66

---

[10]Justice Harlan said he thought

> the writ ought always to lie for claims of nonobservance of those procedures that, as so aptly described by Mr. Justice Cardozo in *Palko v. Connecticut* . . ., are 'implicit in the concept of ordered liberty.' Typically, it should be the case that any conviction free from federal constitutional error at the time it became final, will be found, upon reflection, to have been fundamentally fair and conducted under those procedures essential to the substance of a full hearing. However, in some situations in might be that time and growth in social capacity, as well as judicial perceptions of what we can rightly demand of the adjudicatory process, will properly alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction.

*Mackey v. United States*, 401 U.S. at 693 (Harlan, J., concurring and dissenting). As an example of such a right, Justice Harlan cited *Gideon v. Wainwright*, 372 U.S. 335, 349 (1963), in which the Court recognized the constitutional right to counsel. *Mackey v. United States*, 401 U.S. at 693-94 (Harlan, J., concurring and dissenting).

S.W.3d at 811 (stating that Tenn. Code Ann. § 40-30-122 is "citing the *Teague* standard for retroactivity"); *State v. Gomez*, 163 S.W.3d 632, 651 n.16 (Tenn. 2005) (stating in dicta that Tenn. Code Ann. § 40-30-122 was "virtually identical" to the federal standard), *cert. granted, judgment vacated* 549 U.S. 1190 (2007). To be clear, Tenn. Code Ann. § 40-30-122 does not include *Teague v. Lane*'s terminology about "watershed rules" or "the likelihood of an accurate conviction." However, in the context of post-conviction proceedings, the "ordered liberty" idiom has come to encompass both of these limiting concepts.

We have also determined that, by adopting Tenn. Code Ann. § 40-30-122, the General Assembly intended to change Tennessee's standard for determining the retroactivity of new constitutional rules in post-conviction proceedings. We generally presume that when the General Assembly passes laws on a particular topic, it knows the current law on that subject and legislates accordingly. *Lee Med., Inc. v. Beecher*, 312 S.W.3d at 527; *Seals v. H & F, Inc.*, 301 S.W.3d 237, 242 (Tenn. 2010). In this case, therefore, we presume that the General Assembly knew in 1995 that *Meadows v. State* expressed the current law on the retroactivity of new constitutional rules and that the General Assembly intended to change that law by enacting Tenn. Code Ann. § 40-30-122.

The legislative history of the Post-Conviction Procedure Act confirms that the General Assembly intended to abrogate *Meadows v. State*. Speaking to the House Judiciary Committee on March 29, 1995, Representative Jere Hargrove, the Act's sponsor, explained:

> Finally, we have added language in section 122 which I will guarantee is hard to understand – it is for me – but it is placed there because it is language that has been spoken, interpreted by the United States Supreme Court in *Teague v. Lane*, and it has to be there, in our opinion, to make this, to deal with the retroactivity provisions.[11]

Later, on April 19, 1995, during the floor debate in the House of Representatives, Representative Hargrove explained that the new version of the Post-Conviction Procedure Act contained a "retroactivity standard – a [] stricter federal standard than a state standard."[12] Thus, it appears the General Assembly was aware that the state and federal retroactivity

[11]Hearing on H.B. 1 Before the House Judiciary Comm., 99th Gen. Assembly. (Mar. 29, 1995) (statement of Rep. Jere Hargrove).

[12]Debate on H.B. 1 Before the House, 99th Gen. Assembly (Apr. 19, 1995) (statement of Rep. Jere Hargrove).

standards differed and that the it chose to codify a "stricter" standard that was derived from *Teague v. Lane*.

To summarize, we have determined that, by adopting Tenn. Code Ann. § 40-30-122, the General Assembly intended to replace the retroactivity standard this Court adopted in *Meadows v. State* with the functional equivalent of the federal standard from *Teague v. Lane*, a standard the General Assembly recognized was "stricter" than Tennessee's prior standard. Additionally, we find that the General Assembly intended that the phrase "fairness safeguards that are implicit in the concept of ordered liberty" should be interpreted along the same lines as the *Teague v. Lane* standard. In this light, the "fairness safeguards" of Tenn. Code Ann. § 40-30-122 are equivalent to the *Teague v. Lane* standard's "watershed rules of criminal procedure" or "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague v. Lane*, 489 U.S. at 313.

**C.**

Although the rule we announced in *Ward v. State* is an important new constitutional rule, we can not say that it amounts to a "fairness safeguard . . . implicit in the concept of ordered liberty" which, under Tenn. Code Ann. § 40-30-122, must be applied retroactively to judgments that became final before its recognition.

This finding in no way detract's from the *Ward v. State* ruling's critical importance. We live in an era when the vast majority of criminal prosecutions are resolved by plea agreements. As the United States Supreme court recently observed, ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. Plea bargains have supplanted trials as "the critical point" of a defendant's interaction with the criminal justice system. *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399, 1407 (2012) (citations omitted). As in Mr. Bush's case, the closest thing to a trial most defendants will face is their plea colloquy. *See Wlodarz v. State*, 361 S.W.3d 490, 503-04 (Tenn. 2012) (holding that "a guilty plea proceeding qualifies as a trial" for many criminal procedure purposes).

Yet, we decline to find that the *Ward v. State* rule requires retroactive application under the standard established in Tenn. Code Ann. § 40-30-122. First, the *Ward v. State* rule would not appear to affect the accuracy of Mr. Bush's conviction. We highly doubt that the failure of a trial court to alert a defendant to the sentence of lifetime community supervision would cause an innocent person to plead guilty. The crimes that warrant lifetime community supervision are all class A and class B felonies – not the type of conviction to which a defendant would be likely to confess falsely. *See* Tenn. Code Ann. § 39-13-524(a).

-21-

Second, the rule of *Ward v. State* is also not a "watershed rule of criminal procedure." In this regard, the rule was simply an extension of the long-recognized constitutional doctrine that courts may not accept a guilty plea "without an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Howell v. State*, 185 S.W.3d 319, 331 (Tenn. 2006); *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). In *State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), this Court first adopted procedures to ensure that plea colloquies in Tennessee did not violate the *Boykin v. Alabama* "knowing, voluntary, and intelligent" rule. Similarly, Tenn. R. Crim. P. 11(b)(1)(B) requires that before a court accepts a guilty plea, it must inform the defendant of, among other things, "the maximum possible penalty and any mandatory minimum penalty." *See also Lane v. State*, 316 S.W.3d 555, 563-64 (Tenn. 2010) (cataloging the full requirements for a plea colloquy in Tennessee). In *Ward v. State*, we simply held that lifetime community supervision qualified as one of the penalties that a trial court must disclose under Tenn. R. Crim. P. 11(b)(1)(B) and under the due process doctrines which birthed Tenn. R. Crim. P. 11(b). *Ward v. State*, 315 S.W.3d at 474.

This Court's constitutional function is to effectuate the intent of the General Assembly even when the result may appear unfair. *Pickard v. Tennessee Water Quality Control Bd.*, ___ S.W.3d ___, ___, 2013 WL 6623553, at *10 (Tenn. 2013). Legislative policy is "committed to the intelligence and discretion of the [General Assembly] and the courts will not run a race of opinions with these representatives of the people upon the question of the wisdom and propriety of such legislation." *Rush v. Great Am. Ins. Co.*, 213 Tenn. 506, 518–19, 376 S.W.2d 454, 459 (1964).

Because the rule we announced in *Ward v. State* was neither a watershed rule of criminal procedure nor a rule that substantially enhances the accuracy of convictions, we decline to find that the rule is "implicit in the concept of ordered liberty" under Tenn. Code Ann. § 40-30-122. Therefore, the rule of *Ward v. State* is not a new constitutional right for which "retroactive application . . . is required" under Tenn. Code Ann. § 40-30-102(b)(1). Because the rule did not toll the Post-Conviction Procedure Act's one-year filing deadline, the Court of Criminal Appeals correctly held that Mr. Bush's petition was untimely and should have been dismissed.

## VI.

One final question remains unresolved. Mr. Bush also argues that due process considerations require tolling the post-conviction deadline. The trial court agreed, and found the post-conviction statute of limitations should be tolled on due process grounds. Based on this record, we agree with the holding of the Court of Criminal Appeals that this case does not warrant due process tolling. *See Bush v. State*, 2012 WL 2308280, at *9-10.

The notion of "due process" is anchored in the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the "Law of the Land" clause in Article I, Section 8 of the Constitution of Tennessee.[13] Due process "embodies the concepts of fundamental fairness," justice, and "the community's sense of fair play and decency" *Whitehead v. State*, 402 S.W.3d 615, 623 (Tenn. 2013) (quoting *Seals v. State*, 23 S.W.3d 272, 277 (Tenn. 2000); *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). Both this Court and the United States Supreme Court have recognized that due process requires that, once the legislature provides prisoners with a method for obtaining post-conviction relief, prisoners must be afforded an opportunity to seek this relief "at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982)).

We recently clarified Tennessee's due process tolling standard in *Whitehead v. State*. We held that a post-conviction petitioner is entitled to due process tolling of the one-year statute of limitations upon a showing (1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing. *Whitehead v. State*, 402 S.W.3d at 631 (citing *Holland v. Florida, 560 U.S. 631, __, 130 S. Ct. 2549, 2562 (2010)). This rule applies to all due process tolling claims, not just those that concern alleged attorney misconduct.

---

[13]As this Court has explained:

The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." In addition, the Fourteenth Amendment to the U.S. Constitution provides, in part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." The corresponding provision of the Tennessee Constitution provides "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8.1.

Although the language of these provisions is different, the "law of the land" provision of Article I, § 8 of the Tennessee Constitution has been construed as synonymous with the "due process of law" provisions of the Fifth and Fourteenth Amendments to the U.S. Constitution. However, U.S. Supreme Court interpretations of the due process clauses of the U.S. Constitution only establish a minimum level of protection, and this Court, as the final arbiter of the Tennessee Constitution, is always free to expand the minimum level of protection mandated by the federal constitution.

*Burford v. State*, 845 S.W.2d 204, 207 (Tenn. 1992) (citations omitted).

-23-

We also noted in *Whitehead* that the standard for pursuing one's rights diligently "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts [to pursue his or her claim]." *Whitehead v. State*, 402 S.W.3d at 631 (quoting *Aron v. United States,* 291 F.3d 708, 712 (11th Cir. 2002)).  However, we emphasized that due process tolling "must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Whitehead v. State*, 402 S.W.3d at 631-32 (quoting *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000)).

The threshold for triggering this form of relief is "very high, lest the exceptions swallow the rule."  *Whitehead v. State*, 402 S.W.3d at 632 (quoting *United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000)).  Prior to *Whitehead*, this Court had tolled the post-conviction deadline on due process grounds in cases (1) where the grounds for overturning the conviction arose after the statute of limitations had run; (2) where the prisoner was mentally incompetent; and (3) where a prisoner has been actively misled by attorney misconduct.  *Whitehead v. State*, 402 S.W.3d at 623-24.

This case could be construed as one in which the grounds for overturning the conviction arose after the one-year deadline had already passed.  On one hand, the violation of Mr. Bush's due process rights actually occurred before the trial court entered its judgment of conviction.  On the other hand, Mr. Bush did not discover that he had been sentenced to lifetime community supervision until after he was released from jail.  This discovery may or may not have occurred within a year of his conviction becoming final.  Mr. Bush was sentenced to serve one year in the Sumner County jail, and the record does not make clear when that term began or ended.  However, we do know two things: (1) Mr. Bush essentially admitted that he knew about lifetime community supervision by December 2004 at the latest; and (2) Mr. Bush did not apply for post-conviction relief until April 2011.

Under these facts, we cannot find that Mr. Bush was diligently pursuing his rights under the first prong of the *Whitehead-Holland* test.  Even if Mr. Bush's claim could fairly be characterized as a later-arising claim, nothing prevented him from filing his petition in the intervening years between his discovery of the undisclosed sentence and the filing of his post-conviction petition.  In light of the General Assembly's clear preference that the post-conviction statute of limitations be strictly construed, we do not find this to be one of those rare unconscionable cases that cries out for due process tolling.

## VII.

In conclusion, we hold that our decision in *Ward v. State* does not require retroactive application under Tenn. Code Ann. § 40-30-122. Therefore, our *Ward* decision does not toll the post-conviction statute of limitations under Tenn. Code Ann. § 40-30-102(b)(1). Additionally, Mr. Bush does not qualify for due process tolling of the post-conviction statute of limitations. We affirm the judgment of the Court of Criminal Appeals and assess the costs of this appeal to the State of Tennessee.

_____

WILLIAM C. KOCH, JR., JUSTICE