IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2014

## ROLLY WILLIAM WHITFORD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3239    J. Randall Wyatt, Jr., Judge**

_____

**No. M2013-01402-CCA-R3-PC - Filed March 31, 2014**

_____

The Petitioner, Rolly William Whitford, pled guilty to sexual battery and rape, with the trial court to determine the length and manner of service of his sentence. The trial court imposed an effective sentence of twelve years, to be served in the Tennessee Department of Correction. This Court affirmed the Petitioner's sentence on appeal. *State v. Rolly William Whitford*, No. M2009-02525-CCA-R3-CD, 2011 WL 255310 at *1 (Tenn. Crim. App., at Nashville, Jan. 20, 2011), *perm. app. denied* (Tenn. May 25, 2011). The Petitioner timely filed a petition seeking post-conviction relief, asserting that his guilty plea was not entered knowingly and voluntarily, which the post-conviction court denied after a hearing. The Petitioner now appeals, maintaining that his guilty pleas were not entered knowingly and voluntarily because he was never advised of the lifetime supervision requirement for sex offenders. After a thorough review of the record, the briefs, and relevant authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the Appellant, Rolly William Whitford.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

A Davidson County grand jury indicted the Petitioner for two counts of rape and four counts of sexual battery. The Petitioner pled guilty to one count of sexual battery and one count of rape. At a subsequent sentencing hearing, the trial court sentenced the Petitioner to serve two years for the sexual battery conviction and a consecutive ten years for the rape conviction for a total effective sentence of twelve years. The Petitioner appealed the trial court's sentences and this Court affirmed the sentences. *State v. Rolly William Whitford*, No. M2009-02525-CCA-R3-CD, 2011 WL 255310 at *1 (Tenn. Crim. App., at Nashville, Jan. 20, 2011), *perm. app. denied* (Tenn. May 25, 2011).

## A. Guilty Plea Submission Hearing

At the guilty plea submission hearing, the trial court reviewed the Petitioner's charges and the range of sentences that the Petitioner might receive at the subsequent sentencing hearing. The Petitioner affirmed his understanding of the charges and the range of sentences. The trial court then reviewed the Petitioner's rights and the waiver of those rights as it related to the entry of guilty pleas. The Petitioner once again affirmed his understanding. The Petitioner testified that he had reviewed the plea petition "in its entirety" and confirmed that he understood "exactly" what he was doing. The Petitioner then stated, "It is my decision to plead guilty" and stated that he was doing so voluntarily. The State then presented the following factual basis for the trial court's acceptance of the guilty pleas:

> [H]ad this matter proceeded to trial . . . we would have been calling for purposes of that hearing [M.A.P.][1], who was the daughter of [the Petitioner's] wife. She would have testified that sometime during the summer of 2005, she believed between August and September of 2005, that she was asleep [at] a residence here in Nashville, Davidson County, that she awoke to have the [Petitioner] in her room, that the [Petitioner] had digitally penetrated her genitals.
>
> Had the other counts proceeded to trial, we would have provided testimony from [B.D.] who would have testified that on diverse occasions in Nashville, [the Petitioner, a friend of her family] had come into her bedroom. And on one occasion she had awoken to find her clothing disturbed. She would have also testified that other occasions in other jurisdictions, that similar occurrences had occurred on one of those occasions which [the Petitioner] had fondled her genitals when she had awakened.

---

[1] In order to protect the privacy of the minor victims, we refer to them by their initials only.

[The Petitioner] provided statements during a telephone conversation with [B.D.'s] mother in which he had admitted to multiple instances, both in Nashville and in other locations where he had fondled the genitals of [B.D] while she was asleep.

He also made admissions that with respect to [M.A.P] that he had fondled her genitals on a single occasion here in Nashville.

## B. Post-Conviction Hearings

The hearings on the Petitioner's post-conviction petition were held on three dates: February 21, 2013; March 12, 2013; and March 28, 2013. At the first of the three hearings, the Petitioner testified that his case was set for trial but he ultimately pled guilty to the offenses rather than proceed to trial. He explained that his attorney ("Counsel") met with him nine times before the trial date and that on each occasion "tried to get [him] to do a plea deal." The Petitioner said that his attorney never advised him of his options related to the decision to plead guilty or proceed to trial. He said that Counsel never advised him of the lifetime supervision requirement for sex offenses. He could not recall whether the trial court had advised him of the requirement and denied that the State's prosecutor had ever mentioned the supervision requirement. The Petitioner said that, had he known of this requirement, he would not have pled guilty to the two offenses. The Petitioner asserted that Counsel had misadvised him about the possible range of punishments for the offenses to which he pled.

On cross-examination, the Petitioner testified that, during the pendency of this case, four different attorneys represented him. He said that not one of those attorneys ever advised him of the lifetime supervision requirement. The Petitioner agreed that he had "some difficulties" working with the other attorneys that represented him.

The Petitioner maintained that Counsel never advised him about the strengths and weaknesses of pursuing a trial versus entering a plea agreement. He agreed, however, that Counsel advised him that he faced additional charges if he proceeded to trial and the likelihood of an alternative sentence was less if he proceeded to trial.

Counsel testified that he was the Petitioner's fourth attorney related to this case. Counsel said that he knew the State's proof for the allegations and that the Petitioner had made "some incriminatory statements" related to the offenses. Counsel recalled that he reviewed the discovery with the Petitioner "extensively." He said that he did so because the Petitioner's previous attorney had filed a motion to suppress the Petitioner's incriminating statements to the victim's mother. Counsel said that he reviewed the documents and case law

3

with the Petitioner before withdrawing the motion because there was no legal basis to suppress the statement. Counsel said that he discussed "tactics" with the Petitioner that included attacking the victim's credibility. He explained that the Petitioner's statements implicating himself were "very damaging to any defense."

Counsel testified that he discussed consecutive sentencing as well as the potential for additional charges based on materials the State alleged were child pornography found on one of the Petitioner's computers. Counsel agreed that he outlined the sentencing options for the Petitioner but stated that he "never guaranteed him or promised him" a particular sentence. Counsel recalled that the Petitioner was "fixated" on negotiating a sentence that did not require him to go to the Department of Correction but would allow him to stay in Nashville. Counsel said that, at the time, he did not anticipate the Petitioner pleading guilty based on the Petitioner's demeanor and assertions. He denied pressuring the Petitioner into pleading guilty in this case. He also denied making false representations about the sentence to induce the Petitioner to plead guilty.

Counsel testified that he had reviewed the transcripts in this case and that the Petitioner was not advised in court of the lifetime supervision requirement for sex offenders. He noted that, at the time of the guilty pleas, there was not a legal requirement for defendants to be advised of the requirement during plea colloquies. Counsel said that, even though it was not a requirement, he advised clients of the lifetime supervision requirement because it was "still a consequence of the plea and a very serious one." He said that, "in addition to telling [clients] the current state of the law I always tell clients as kind of a catch-all [that] every legislative session they make it tougher for sex offenders to live. They add more restrictions on where they can live [and] where they can work." When asked if he advised the Petitioner of the lifetime supervision requirement, Counsel responded:

> It was my practice at the time to discuss it. I don't recall specifically discussing that with him. I remember discussing the plea. I have in my notes, just to generally discuss the State's offer. I have the breakdown of the years, because I always have to do the math long hand and we went over all of that. I don't have in my notes that I specifically told him that thought.

Counsel then stated that, although it was not documented in his notes, he believed that he discussed the requirement with the Petitioner. He explained that his belief was based on:

> [S]everal conversation we had[,] again him being fixated [on] wanting to go into CCA[,] and I remember talking about the registry at one point and he always was not concerned with [the sex offender registry] as long as he was able to first not go to TDOC or [second] get probation.

4

Counsel testified that the Petitioner never asked to withdraw his plea or indicated that he had lied to the trial court during the plea colloquy. Counsel stated that it was the Petitioner's decision to plead guilty and the Petitioner's decision to seek an appeal of his sentence. The Petitioner expressed some "hesitancy" about seeking an appeal, telling Counsel that he believed he had a year to file an appeal. Counsel said that he corrected the Petitioner and informed him that he had only thirty days and, therefore, needed to make a decision. Thereafter, the Petitioner told Counsel to "go ahead and do the appeal." After filing the appeal, Counsel received a letter from the Petitioner stating, "Please, do not appeal my case." The Court of Criminal Appeals denied the direct appeal and Counsel notified the Petitioner of the denial. Counsel said that, at that time, he informed the Petitioner that he could seek permission to appeal to the Tennessee Supreme Court, but the Petitioner declined. Counsel said that he filed a motion to be relieved, which was granted. Counsel recalled that it was around this same time that the Petitioner began writing to Counsel, stating he had changed his mind and wanted Counsel to file an application. Counsel said that he wrote the Petitioner a letter notifying him that Counsel had been relieved and would not be seeking further appeal.

Counsel testified that the Petitioner never expressed any dissatisfaction with his representation but say he wished he had been sentenced to probation or split confinement.

At the March 12, 2013, hearing, Michael Colavecchio testified that he represented the Petitioner on this case for a period of time before Counsel. Mr. Colavecchio said that he was not the first attorney who worked on this case and that he was retained by the Petitioner's family. He said he represented the Petitioner for between six months and a year. During his representation of the Petitioner the State made "offers," but the Petitioner indicated to Mr. Colavecchio that he wanted to proceed to trial.

Mr. Colavecchio testified that he reviewed his file before the post-conviction hearing, but the file was not a complete file because he had turned over portions of it to Counsel when Counsel assumed representation of the Petitioner. As such, he did not know the specific plea offer made by the State, but he knew all of the State's offers included a guilty plea to rape. Mr. Colavecchio agreed that the rape charge required lifetime supervision as part of the sentence. When asked if he conveyed the supervision for life requirement to the Petitioner as part of the plea offer, Mr. Colavecchio responded:

> While I don't specifically recall whether I advised him that he would have either community supervision for life or be on the sexual offender registry for life, it is my practice to explain to someone who may be entering a plea to a charge that required one or both of those to convey that information to them.

5

. . . .

I don't have any doubt that there was a discussion about that [community supervision for life requirement] issue, but I don't recall specifically when I did and to what extent.

Mr. Colavecchio testified that his representation of the Petitioner ended "at some point in the last half of 2008." He explained that during one of their meetings, the Petitioner became "irate and threatening." Mr. Colavecchio determined that it would not be in the Petitioner's "best interest" for Mr. Colavecchio to continue to represent the Petitioner, and so he withdrew as the Petitioner's attorney.

At the final, March 28, 2013, hearing on the petition, Jon Wing testified that he was originally appointed to work on the Petitioner's case. He said that he worked on the case with another attorney in his office, Tyler Yarbrough. Mr. Wing said that he was appointed to represent the Petitioner in August 2007. He represented the Petitioner until March 2008 when the Petitioner retained private counsel, Mr. Colavecchio. Mr. Wing said his office was re-appointed to represent the Petitioner in October 2008 until February 25, 2009, when Counsel was appointed. Mr. Wing said that both times his representation of the Petitioner was terminated due to the Petitioner's dissatisfaction with the representation.

Mr. Wing testified that he received and reviewed the State's discovery in this case. Once Mr. Colavecchio assumed representation, Mr. Wing's office provided Mr. Colavecchio with the discovery. Likewise, when the case was once again transferred back to Mr. Wing, any new or additional documentation was provided.

Mr. Wing testified that his notes reflected that any plea offers from the State included a guilty plea to either rape or attempted rape. Mr. Wing agreed that either rape or attempted rape required by statute community supervision for life. Mr. Wing said that, although it was his practice, his notes did not reflect that he spoke with the Petitioner about this requirement. Ms. Yarbrough's notes, however, reflected that the offer included "lifetime registry." He agreed that all discussions that both he and Ms. Yarbrough had with the State regarding a plea offer involved community supervision for life. He conveyed the offers, but the Petitioner was not interested in entering a plea to the offers made.

After hearing the evidence, the trial court issued an order denying the Petitioner relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that his guilty plea was not knowingly and

6

voluntarily entered because he was not advised of the lifetime community supervision requirement. The State responds that because the Petitioner was advised by three different attorneys of this requirement, he has not adequately demonstrated that his plea was not entered knowingly, intelligently, and voluntarily. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. *See Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Boykin*, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)). A petitioner's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

When determining the knowing and voluntary nature of a guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A reviewing court can look to a number of factors to find a "knowing and intelligent plea," including "[t]he relative intelligence of the petitioner, the degree of his [or her] familiarity with criminal proceedings, the opportunity to confer with competent counsel and the trial court regarding the charges faced, and the desire to avoid a greater punishment resulting from a jury trial." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The Petitioner must have an understanding of the charges against him and the consequences of pleading guilty,

7

including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id.* at 905. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

In this case, the Petitioner asserts that he should be granted relief because the trial court did not advise him of the lifetime supervision requirement pursuant to *Ward v. State*. 315 S.W.3d 461 (Tenn. 2010). The defendant in *Ward* filed a petition for post-conviction relief, alleging, among other things, that his guilty plea was not knowing and voluntary because the trial court failed to advise him of the lifetime community supervision requirement. Our Supreme Court held that, "[b]ecause the mandatory lifetime supervision requirement is an additional part of a defendant's sentence, the trial court is constitutionally required to inform the defendant of the supervision requirement as part of the plea colloquy." *Ward*, 315 S.W.3d at 474. This opinion was issued on July 7, 2010, and the Petitioner pleaded guilty to these offenses on September 11, 2009, almost ten months before the *Ward* opinion. The *Ward* court did not address the retroactivity of this holding.

The Supreme Court addressed the issue in *Derrick Brandon Bush v. State of Tennessee*, __ S.W.3d __, 2014 WL 295187 (Tenn., January 28, 2012). As to the question of the retroactivity of *Ward*, the Court held:

> Although the rule we announced in *Ward v. State* is an important new constitutional rule, we can not say that it amounts to a "fairness safeguard . . . implicit in the concept of ordered liberty" which, under Tenn. Code Ann. § 40-30-122, must be applied retroactively to judgments that became final before its recognition.

*Id*. at *16.

In its written order, the trial court first noted the *Ward* case and then provided the following reasoning in support of its denial of relief:

> The Court finds that the proof at the post-conviction hearing established by clear and convincing evidence that the Court did not advise the Petitioner of the lifetime supervision requirement during the plea colloquy. Under *Ward*, this was constitutional error on the part of the Court. However, if the proof shows that the [Petitioner] already knew what he was not advised, the error was harmless and the conviction stands. The State must demonstrate that the error was harmless beyond a reasonable doubt.

8

Here, the Court finds that the Petitioner was represented by three separate attorneys prior to the plea. Each of them indicated that, based on their usual practice at the time, they believed they advised the Petitioner regarding the lifetime supervision requirement, even though they could not remember exactly when they so advised him. As stated above, the Court does not find the Petitioner's testimony to be credible and fully credits the testimony of the attorneys. Based on the testimony, the Court is inclined to believe that the Petitioner was advised multiple times of the lifetime supervision requirement of the plea, he already knew about it, and that the error was therefore harmless.

The post-conviction court found that the Petitioner's testimony was not credible. We defer to the post-conviction court's findings regarding the credibility of witnesses. *See Momon*, 18 S.W.3d at 156. Furthermore, we agree with the post-conviction court that the Petitioner has failed to prove by clear and convincing evidence that his plea was not made knowingly and voluntarily. *See* T.C.A. § 40-30-110(f) (2006); *Momon*, 18 S.W.3d at 156. Therefore, the Petitioner is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE