IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 17, 2016

## CHARLES R. BLACKSTOCK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 295325        Barry A. Steelman, Judge**

_____

**No. E2015-01384-CCA-R3-PC – Filed March 31, 2016**

_____

In 2000, the Petitioner, Charles R. Blackstock, pleaded guilty to one count of especially aggravated kidnapping and two counts of rape of a child, and the trial court sentenced him to three consecutive twenty-five year sentences. This Court affirmed the consecutive sentencing on appeal, but modified the total effective sentence to seventy-one years. *State v. Charles R. Blackstock*, No. E2000-01546-R3-CD, 2001 WL 969036, at *1 (Tenn. Crim. App., at Knoxville, Aug. 27, 2001), *no Tenn. R. App. P. 11 application filed*. In 2013, the Petitioner filed a petition for habeas corpus relief, which was denied. The Petitioner appealed, and this Court affirmed. *Charles R. Blackstock v. State*, No. E2013-01173-CCA-R3-HC, 2014 WL 1092812, at *1 (Tenn. Crim. App., at Knoxville, Mar. 19, 2014), *no Tenn. R. App. P. 11 application filed*. In 2015, the Petitioner filed a petition for post-conviction relief alleging that he had received the ineffective assistance of counsel at the guilty plea hearing and also during the habeas corpus proceeding. The post-conviction court summarily dismissed the petition. On appeal, the Petitioner maintains that his counsel during the habeas corpus proceeding was ineffective. He further contends that the post-conviction court erred when it did not "mention[] the claim of ineffective assistance of counsel." After a thorough review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Charles R. Blackstock, Tiptonville, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; and Neal Pinkston, District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Facts
### A. Guilty Plea Hearing

This case arises from allegations that the Petitioner kidnapped and raped a nine-year-old girl. In our opinion on his direct appeal from his sentence, this Court summarized the facts presented as follows:

At the submission hearing, the assistant district attorney summarized the facts as follows:

[T]hat on July 18th of 1999, the [Petitioner] came in contact with a child, a black female, date of birth 8/13 of 1989, in the 2600 block of Market Street where the victim was riding her bicycle . . . . The [Petitioner] got out of his vehicle, grabbed the victim, and threw her in the trunk of his vehicle; while she was kicking and screaming he turned up the music and proceeded to drive around and ended his location at 409 Cameron Circle, at which point the rape proceeded . . . . The [Petitioner] . . . indicate[d] that he went by a washateria in that area and proceeded on the freeway, got off heading toward Red Bank near the Marriot which could have concluded five miles or plus that the child was locked in the trunk of the car . . . . On the proceeding with the rape of the child, once they reached Cameron Circle the [Petitioner] got the child out of the trunk of the vehicle, took her to an area back by the woods in a secluded area where he had the child's clothes taken off of her, he proceeded to lay her down on the ground where he made the child perform oral sex on him . . . . And in the other case on the anal penetration, he proceeded to place the child face down on the mud, penetrate her anally, and then when the child continued to scream and got up and started to run away he got into his car and proceeded to leave the scene.

At the sentencing hearing, C.T. Ward testified for the state. While he was walking on Cameron Hill near 6th Street, he heard a child calling for help. When he turned, he saw the victim, completely unclothed, staggering in his direction. Several bruises and abrasions were visible. Ward flagged down a passing car and the driver contacted the police by cell phone. He helped wrap the victim in a towel and waited until the police arrived at the scene.

Janice Atkinson, of the Chattanooga Police Department child abuse division, saw the nine-year-old victim in the examination room at the

hospital. The victim's face was swollen and she was bleeding from her vaginal area. Detective Atkinson described her as "traumatized" and "hysterical."

The [Petitioner] was initially questioned in November of 1999. During the course of the investigation, he gave three different statements to the police. In his second statement, which was read aloud at trial, the [Petitioner] admitted to abducting the victim and then forcing her into the trunk of his car. He claimed that when he opened the trunk, the victim had removed her clothing and said, "I'll do anything you want me to, just don't kill me. I won't tell nobody." He acknowledged that the victim performed oral sex on him and conceded that he struck the victim, explaining that he did so because she pulled his penis. He denied anal penetration. In his third statement, the [Petitioner] admitted that earlier on the date of the offenses, he had approached children on a playground in East Lake Courts but was interrupted by a mother calling to her daughter.

Linda Elligan, the Clinical Director of the Children's Advocacy Center of Hamilton County, Inc., testified that she provided psychological treatment to the victim. She described abduction by a stranger as rare and made a diagnosis of post-traumatic stress disorder. Ms. Elligan observed that the victim felt responsible for the attack because she had been warned not to talk to strangers.

Natalie Cooper, the victim's aunt, testified that the victim was fearful following the attack. She recalled that the victim would not allow any of her own family members to see her at the hospital. Speaking on behalf of the family of the victim, Ms. Cooper asked the trial court to impose the maximum possible sentence.

Evelyn Robinson, the [Petitioner's] mother, apologized for her son's misdeeds and asked for mercy. During cross-examination by the state, she acknowledged that while the [Petitioner] completed Tennessee Preparatory School, he had engaged in disruptive behavior and had failed drug screens. Ms. Robinson stated that she did not become aware that the [Petitioner] had a drug problem until after his discharge from the Navy.

Dr. David Solovey, a clinical psychologist, testified that the [Petitioner]'s problems began at the age of eight or nine, following his father's death in prison. Dr. Solovey stated that because of difficulties with his mother, the [Petitioner] ultimately moved in with the director of a community center who sexually abused him from age 11 to age 17. Dr. Solovey testified that later, while the [Petitioner] was in the Navy, he was

involved in a serious automobile accident, sustaining a head injury. After the accident, the [Petitioner] became "reinvolved" with drugs and was "discharged under less than honorable conditions." It was Dr. Solovey's opinion that the [Petitioner] suffered from long-term depression, post-traumatic stress disorder, and schizotypal personality disorder. He believed that the [Petitioner] would require intensive sexual offender treatment. On cross-examination, Dr. Solovey acknowledged that the [Petitioner] had admitted that he was "out cruising" for little girls prior to the abduction and rape of the victim.

The [Petitioner] read aloud a statement wherein he expressed remorse for his actions. He specifically asked for "help" and treatment relative to his history of sexual abuse.

*Blackstock*, 2001 WL 969036, at *1-3.

The trial court imposed the maximum term of twenty-five years for each offense and ordered that the sentences run consecutively, for a total effective sentence of seventy-five years. The Petitioner appealed his sentence to this Court. Pursuant to the law in existence at the time of the Petitioner's appeal, we were constrained to reduce the Petitioner's two sentences for rape of a child from twenty-five years to twenty-three years. We affirmed the trial court's imposition of consecutive sentencing, for a total effective sentence of seventy-one years. *Id.* at *10.

## B. Habeas Corpus Proceeding

In 2013, the Petitioner filed a petition for a writ of habeas corpus. As summarized by this Court in our opinion from the Petitioner's direct appeal of the habeas corpus court's denial of his petition for habeas corpus relief:

In 2013, the [P]etitioner filed in the Hamilton County Criminal Court two petitions for writ of habeas corpus that challenged his convictions of rape of a child on grounds that the sentences imposed for those convictions were illegal. He claimed that the parties' "mutual understanding" as to the release eligibility percentage applicable to his child rape sentences "was in direct contravention of the Sentencing Act." He also claimed that the judgments were illegal because the trial court failed to grant him pretrial jail credit.

In a thorough written order, the habeas corpus court observed that the record clearly established that the parties' "mutual understanding" was that the release eligibility percentage applicable to the [P]etitioner's convictions of rape of a child was 100 percent. The habeas corpus court

4

then noted that the trial court had incorrectly checked the release eligibility box on the uniform judgment form designated "Violent 100%." Noting that the record clearly established that the parties knew that the [P]etitioner, as a child rapist, would be required to serve 100 percent of his sentence undiminished by sentence reduction credits available to violent offenders, *see* T.C.A. § 40-35-501(i)(1), (3), the habeas corpus court corrected the judgment forms for each of the convictions of rape of a child to reflect that the petitioner was sentenced as a child rapist rather than a violent offender. The habeas corpus court determined that although the judgment forms for the convictions of rape of a child do not contain a grant of pretrial jail credit, the judgment form for the [P]etitioner's conviction of especially aggravated kidnapping, to which the child rape sentences are to be served consecutively, reflected that the [P]etitioner had been granted all the pretrial jail credit to which he was entitled.

In this appeal, the [P]etitioner claims that the habeas corpus court erred by correcting the judgments in his case without having an evidentiary hearing to determine whether the release eligibility designation contained in the judgment forms was a bargained-for element of his plea agreement. The State contends that the habeas corpus court acted appropriately.

*Blackstock*, 2014 WL 1092812, at *1. This Court held:

Here, the [P]etitioner appended to his petition for writ of habeas corpus the judgments in his case, the plea documents, and portions of the transcript of the guilty plea submission hearing. As the State correctly points out, the plea documents contain the following handwritten notation, "All parties understand that Judge Meyer will set sentence at a later date and sentence will be served at 100%." The [P]etitioner's signature appears directly below this notation. The guilty plea submission transcript reflects that the trial court initially told the [P]etitioner he could potentially earn sentence credits equal to a 15 percent reduction in his sentence, but the prosecutor quickly corrected the trial court and stated that the Code required service of 100 percent of the sentence undiminished by sentence reduction credits. Defense counsel agreed, and the trial court told the petitioner that he would be required to serve his child rape sentences day for day. Notwithstanding the plea documents and the plea colloquy, the trial court erroneously checked the "Violent 100%" release eligibility designation. We agree with the habeas corpus court that the trial court's mistake was clerical in nature and thus subject to correction pursuant to Tennessee Rule of Criminal Procedure 36. *See* Tenn. R. Crim. P. 36 ("[T]he court may at any time correct clerical mistakes in judgments . . .

5

arising from oversight or omission."). Nothing supports the [P]etitioner's claim that the "Violent 100%" release eligibility designation was a bargained-for element of his plea agreement. In consequence, the habeas corpus court did not err by correcting the judgments without holding an evidentiary hearing.

*Blackstock*, 2014 WL 1092812, at *2.

## C. Post-Conviction Proceeding

In 2015, the Petitioner filed a petition for post-conviction relief. In it, he alleged that his post-conviction petition was timely based upon the dismissal date of his habeas corpus proceeding. He contended that his trial counsel ("Counsel") was ineffective for not explaining consecutive sentencing to him. He further alleged that, once the trial court ordered consecutive sentencing, Counsel should have filed a motion to withdraw the Petitioner's guilty plea. The Petitioner next asserted that Counsel during the habeas corpus proceedings was also ineffective in multiple ways.

The post-conviction court summarily dismissed the Petitioner's petition for post-conviction relief by written order, finding:

> On preliminary consideration of the subject petition pursuant to T.C.A. § 40-30-106, the Court finds that the claim of ineffective assistance of trial counsel, in connection with which, the Court notes, there is no mention of lifetime, community supervision, is not timely under T.C.A. § 40-30-102, which limits the time for filing a post-conviction petition to one (1) year from the date on which the judgment becomes final or the highest state appellate court to which a party appeals takes final action. Nor does it state an exception to §102(a). *See* T.C.A. § 40-30-102(b) (excepting only claims involving, and invalidation of certain prior convictions from the one-year limitation period of subsection (a)); *Bush v. State*, 428 S.W.3d 1, 21-[2]3 (Tenn. 2014) (recognizing that, in some cases, due process may preclude strict application of the statute of limitations to a claim arising from the belated imposition of lifetime, community supervision but finding that, in that case, it did not); *Watson v. State*, 2011 WL 5841690, at *4 (Tenn. Crim. App.) (describing the trial court's authority to amend the judgment order as "deriv[ing] from rule 36 of the Tennessee Rules of Criminal Procedure, as the improper date of sentencing, the improper date of trial, and the indication that Petitioner "pled guilty" were all merely clerical errors," and as "not extend[ing] the statute of limitations as would a corrected judgment) (citing *Roundtree v. State*, 2009 WL 3163132, at *2 (Tenn. Crim. App.)). *Cf Rountree*, 2009 WL 3163132, at *1 (describing the failure to impose lifetime, community supervision as not a clerical error)

6

(citing *State v. Bronson*, 172 S.W.3d 600, 601-[0]2 (Tenn. Crim. App. 2005)).

As for the claim of ineffective assistance of *habeas-corpus* counsel, it is not cognizable in a post-conviction proceeding. *See* T.C.A. § 40-30-103 (describing the grounds for post-conviction relief as a conviction or sentence that is void or voidable because of the abridgement of a constitutional right.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it summarily dismissed his petition because his trial counsel did not explain to him consecutive sentencing and should have negotiated the consecutive sentencing matter before the hearing. He further contends that his habeas corpus counsel was ineffective because he did not "actually represent" the Petitioner.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

A petition for relief must normally be filed within one year of the date on which the judgment became final if no direct appeal was taken. T.C.A. § 40-30-102(a). Our Legislature has emphasized that "[t]ime is of the essence of the right to file a petition for post-conviction relief," *id.*, and provided only three narrow exceptions to the statute of limitations: (1) a final ruling by an appellate court announcing a new constitutional rule with retroactive application; (2) new scientific evidence establishing actual innocence; or (3) the invalidation of convictions underlying an enhanced sentence. T.C.A. § 40-30-102(b) (2014). "A bare allegation that a constitutional right has been violated and mere

7

conclusions of law shall not be sufficient to warrant further proceedings. Failure to state a factual basis for the grounds alleged shall result in immediate dismissal of the petition." *See* T.C.A. § 40-30-106(d). In the case presently before us it is undisputed that the Petitioner's petition was filed well outside of the applicable statute of limitations. As the post-conviction court noted, the Petitioner's judgment became final thirty days after this Court affirmed his sentence on appeal August 27, 2001.

Our Supreme Court has held that the right to due process may necessitate tolling the statute of limitations in certain circumstances outside of the enumerated statutory exceptions. *Burford v. State,* 845 S.W.2d 204 (Tenn. 1992); *Seals v. State,* 23 S.W.3d 272 (Tenn. 2000). "[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that a potential litigant be provided an opportunity for 'presentation of claims at a meaningful time and in a meaningful manner.'" *Seals,* 23 S.W.3d at 277-78 (quoting *Burford,* 845 S.W.2d at 207). "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." *Smith v. State,* 357 S.W.3d 322, 355 (Tenn. 2011) (quoting *Harris v. State,* 301 S.W.3d 141, 145 (Tenn. 2010)).

As this Court has previously explained, "due process serves to toll the post-conviction statute of limitations for petitioners who face circumstances beyond their control . . . which preclude them from actively raising their post-conviction claims." *Crystle D. Rutherford v. State,* No. M2013-01575-CCA-R3-PC, 2014 WL 1669960, at *2 (Tenn. Crim. App., at Nashville, Apr. 25, 2014) (citing *Williams v. State,* 44 S.W.3d 464, 469 (Tenn.2001)). Our supreme court has identified three circumstances in which due process requires tolling the post-conviction statute of limitations: (1) when claims for relief arise after the expirations of the statute of limitations, *see Sands v. State,* 903 S.W.2d 297, 301 (Tenn. 1995); (2) when a petitioner's mental incompetence prevents him from complying with the statute's deadline, *see Seals,* 23 S.W.3d at 279; and (3) when attorney misconduct or abandonment prevented the petitioner from filing a post-conviction petition within the statute of limitations, *see Whitehead v. State,* 402 S.W.3d 615, 621 (Tenn. 2013). None of these are applicable in this situation. We therefore conclude that due process does not require the tolling of the statute of limitations. We affirm the post-conviction court's summary dismissal of the Petitioner's petition for post-conviction relief. We further note that the Post-Conviction Procedure Act does not contemplate an ineffective assistance of counsel claim with regard to counsel appointed to represent a petitioner during a habeas corpus proceeding. *See* T.C.A. § 40-30-102. The Petitioner is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE