IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 29, 2020

**TYWAN MONTREASE SYKES v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Blount County**
**No. C-26751     David R. Duggan, Judge**

_____

**No. E2019-02024-CCA-R3-PC**

_____

The Petitioner, Tywan Montrease Sykes, appeals from the Blount County Circuit Court's order summarily dismissing his petition for post-conviction relief as untimely and as a second impermissible petition. On appeal, the Petitioner argues that due process requires tolling of the one-year limitations period, that he should have been given an evidentiary hearing to present additional proof of tolling, and that his first petition was not resolved on the merits. Following our review, we affirm the judgment of the post-conviction court summarily dismissing the petition as untimely.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Cody F. Fox, Knoxville, Tennessee, for the appellant, Tywan Montrease Sykes.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ashley J. Salem, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On April 20, 2012, the Petitioner pled guilty to aggravated statutory rape, for which he received a six-year sentence. See Tenn. Code Ann. § 39-13-506. A judgment form to that effect was filed on September 14, 2012, which reflected that sentence was imposed on that same date.

Over seven years later, on June 14, 2019, the Petitioner, pro se, filed a pleading titled "Motion for Ineffective Assistance of Counsel." In the motion, the Petitioner claimed that the April 20, 2012 plea was withdrawn and "a new deal was reached with the State[,] one that specified that registering as a sex offender would not be required." He further indicated that "[i]mmediately following sentencing," his attorney told him that he did not have to register "because it was not a condition of the deal." According to the Petitioner, he was "unduly forced to register" "[s]hortly after" by Investigator Janice Postel of the Blount County Sheriff's Office.

In a prior proceeding,[1] Investigator Postel testified that the Petitioner was placed on the sex offender registry based on his conviction for aggravated statutory rape in 2012. See State v. Tywan Montrease Sykes, No. E2017-02300-CCA-R3-CD, 2018 WL 4960226, at *1 (Tenn. Crim. App. Oct. 15, 2018). Investigator Postel recalled that she conducted an initial registration of the Petitioner on September 20, 2012, while the Petitioner was incarcerated in the Blount County Jail. Id. She met with the Petitioner on that day and provided him with information about the sex offender registry, including a copy of the registry's rules. Id. Investigator Postel met with the Petitioner again on October 9, 2015, after his release from custody, and he completed the Tennessee Sexual Offender Registration/Verification/Tracking form ("the sex offender registration form"), including signing an acknowledgment that the requirements had been fully explained to him and that he understood the requirements. Id. In addition, Investigator Postel testified that the Petitioner met with another investigator from the Blount County Sheriff's Office at the end of February 2016, and the Petitioner provided what he purported to be updated information for the sex offender registry. Ultimately, the Petitioner was arrested on April 5, 2016, for a violation of the sex offender registry. Id. at *2.

According to the Petitioner, when he first met with Investigator Postel in September 2012, she told him, though he objected, that he was required to register and to contact "his attorney and the courts" if he had any issues with registering, so he complied. The Petitioner attached a September 21, 2012 "General Request Form" to his post-conviction motion, wherein he complained to the court clerk's office about his requirement to register as a sex offender. In the motion, the Petitioner asserted that he had been unable to reach his attorney and requested that the deputy clerk look into his plea agreement. On October 11, 2012, the deputy clerk notated on the form,

> I have spoken with your attorney and check[ed] your judgment and
> plea and court notes[, none of which] show that you have to register as a sex

---

[1] This court may take judicial notice its own records. See Harris v. State, 301 S.W.3d 141, 147 n.4 (Tenn. 2010) (citing State v. Lawson, 291 S.W.3d 864, 869-70 (Tenn. 2009)).

offender. If you were ordered to register[,] it would be on your judgment and it is not. I am sending you a copy of your plea and judgment.

The Petitioner also attached a letter from the circuit court clerk dated December 13, 2012. In the letter, the circuit court clerk stated,

> I am sending copies of everything that is in files C-20776 and C-20775.[2] As far as C-18934 which is the stat[utory] rape case, I am sending a copy of your plea and judgment. Registering as a sex offender is not listed on either of these documents therefore, I have called the District Attorney's Office and they are checking to see if there is an error or not. If there is, they will do an amended judgment and that will be sent to you.

According to the Petitioner, no amended judgment had ever been filed, so "no mistake was made and [he] should never have had to register as a sex offender."

The Petitioner averred that in early 2016, he was arrested and charged with rape. According to the Petitioner, though that charge was subsequently dismissed, he was later charged with a violation of the sexual offender registry. The Petitioner claimed that "[i]t was at this time, while incarcerated for the violation, that [he] wrote the courts" again asking for everything related to the aggravated statutory case, and he finally received the documents that he attached to the motion.

The Petitioner further asserted that throughout all of this, he continued to try to reach his attorney, to no avail. He also stated that he could not afford to hire a new lawyer.

Regarding timeliness of the motion, the Petitioner cited the "constant ebb and flow battle for information since 2012" as the reason he did not file this pleading for over seven years. He asserted that he "ha[d] been trying for nearly [seven] years to find answers," and he requested not to be held accountable for any applicable time constraints.

The Petitioner concluded that he had and continued "to suffer greatly for a punishment which was not agreed upon in court." He stated that "it [was] not [his] fault" for "his attorney's lack of availability and/or communication."

Thereafter, the post-conviction court issued a preliminary order appointing counsel to the Petitioner, finding that the Petitioner presented a colorable claim. Following the appointment of counsel, an amended petition for post-conviction relief was filed on July 26, 2019. In the amended petition, the Petitioner asserted that due process required tolling the one-year statute of limitations, that his plea was not knowingly and voluntarily entered

---

[2] It is not clear what prior cases these two numbers reference.

because he did not understand nor was he fully aware of the consequences of plea, that the State breached a material portion of the plea agreement, and that he received ineffective assistance of counsel due to trial counsel's failure to communicate with him and address the registration issue.

The Petitioner attached to the amended petition a letter he had received from trial counsel that was dated June 21, 2019. In the letter, trial counsel indicated that he was responding to the complaint the Petitioner had filed with the Board of Professional Responsibility, as well as a letter sent to trial counsel's office that had been received earlier that same day. Trial counsel stated that while he could not ethically advise the Petitioner on his current situation, it was trial counsel's recollection that the Petitioner was not required to register as a sex offender as part of his plea agreement. Included with the letter were "plea negotiation logs" that, in trial counsel's estimation, confirmed that the Petitioner accepted a plea agreement that did not require his registration as a sex offender.

Relative to due process tolling the post-conviction statute of limitations, the Petitioner cited Matthew B. Foley v. State, No. M2015-00311-CCA-R3-PC, 2016 WL 245857 (Tenn. Crim. App. Jan. 20, 2016), in support of his argument that his claim was "later-arising" because he "was not aware that he would be required to register as a sex offender and maintain that registration until he was subsequently arrested for a violation of the sex offender registry." According to the Petitioner, "the triggering point" for requiring him "to pursue his rights diligently did not occur until his subsequent registry violation," and he claimed that he had thereafter pursued his rights diligently.

In addition, the Petitioner noted that he "repeatedly sent letters" to his attorney and the court clerk's office requesting information and guidance. The Petitioner averred that in effect, his attorney "essentially abandoned him." He again indicated that he did not receive any of the responses from the court until after his arrest for the registry violation. The Petitioner asserted that he suffered from "extraordinary circumstances" that were no fault of his own, which stood in his way and prevented him from timely filing his petition. The Petitioner concluded that the extraordinary circumstances, including his attorney's "misrepresenting his plea agreement, abandoning him, and correspondence never being delivered" to him, required due process tolling of the limitations period.

A hearing took place on October 21, 2019. At the outset of the hearing, the post-conviction court reviewed the procedural history of the Petitioner's case. The post-conviction court referenced a prior hearing, during which the parties discussed the statute of limitations and any possible tolling based upon due process grounds. At the end of that hearing, the post-conviction court wanted the parties to research whether the court was required to give the Petitioner a hearing on his allegations for due process tolling or whether it could dismiss the petition summarily as time-barred. The post-conviction court further noted that at the prior hearing, the parties discussed whether this was the Petitioner's

- 4 -

second petition for post-conviction relief; the State argued at that time that this was in fact the Petitioner's second petition.

The post-conviction court indicated that it had reviewed the Petitioner's case file in the interim between the hearings and that the Petitioner had in fact filed a "court request" earlier that year, on January 22, 2019, which the post-conviction court treated as a petition for post-conviction relief and summarily dismissed for failure to state a colorable claim.[3] The post-conviction court also provided more details about this prior court request or petition for post-conviction relief and its ruling on the issues.[4] According to the post-conviction court, the Petitioner, after entering his April 20, 2012 plea, filed a motion to withdraw his plea, but he later, on September 14, 2012, withdrew that motion to withdraw his plea. The post-conviction court stated that the Petitioner did not allege ineffective assistance of counsel in his petition or "any clear assertions that his plea was not knowing or voluntary or any other basis for post-conviction relief," and that even if his allegations were viewed as one alleging an involuntary plea because he was not informed that he would be placed on the sex offender registry and that he would have gone to trial if appropriately advised, it was clear from the Petitioner's "voluminous correspondence in the file that as early as 2012, . . . he was aware that he would have to register as a sex offender despite his allegation that his attorney had not so informed him." The post-conviction court specifically referenced the general request form dated September 21, 2012, and stated that it had attached that form to the order. The post-conviction court then observed that the Petitioner had waited seven years before filing the January 22, 2019 petition, and it ruled that "[w]hile [the] Petitioner refer[red] to new evidence that should toll the statute of limitations, it [was] not clear what new evidence the Petitioner" was claiming. The post-conviction court determined that the Petitioner had "failed to state any grounds for tolling of the statute of limitations which would necessitate a hearing."

After reading the prior order, the post-conviction court cited to Tennessee Code Annotated section 40-30-102(c), which states that in no event can more than one petition be filed; that if a prior petition has been filed which was resolved on the merits, any second or subsequent petition shall be summarily dismissed; and that a petitioner may move to reopen a post-conviction proceeding that has been concluded, under the limited circumstances set out in section 40-30-117. The post-conviction court stated that here, "there may be a question about whether [its] earlier dismissal was . . . a dismissal on the merits because [it was] dismissed . . . without a hearing." However, the post-conviction

---

[3] Though this prior petition or order of dismissal are not included in the appellate record, the post-conviction court indicated that it had these documents before it at the hearing.

[4] The post-conviction court seemingly read verbatim from its order of dismissal; though it is not entirely clear what was included in the order.

court also observed that it was "obvious" from the prior order that it had in fact considered the merits of the Petitioner's claims and that the Petitioner had now filed a second petition.

In response to the post-conviction court's comments, post-conviction counsel noted that at the previous hearing, the parties "went through and said that if a claim was colorable with facts taken most favorably to the Petitioner, then an evidentiary hearing would proceed," and that then they "were told to research the issue of whether due process required the tolling of the statute of limitations and to research that question." Post-conviction counsel observed that the statute of limitations for post-conviction relief cannot deny the Petitioner a reasonable opportunity to assert his claim in a meaningful time and manner and asked that the Petitioner be given an evidentiary hearing allowing him to present evidence of due process tolling and have his claim heard on the merits. The post-conviction court asked what evidence was to be presented as a basis for due process tolling when the Petitioner had conceded that he was aware that he was placed on the sex offender registry as early as September 21, 2012. Post-conviction counsel averred that the Petitioner "believe[d] in his correspondence" that "[trial counsel] was still representing him and carrying on with this procedure." Post-conviction counsel further averred that the Petitioner had been pursuing his rights diligently and that there had been extraordinary circumstances that stood in the way of timely filing and cited the following evidence:

> The evidence that we would put on for the [c]ourt . . . would be that multiple correspondence that [the Petitioner] wrote various entities, including [trial counsel], the Tennessee Board of Professional Responsibility, the Blount County Circuit Court Clerk's office trying to figure out how he would go about receiving instruction on how to combat that registration on the sex offender registry when he was not aware that he would be required to register.

The State responded that the Petitioner had not presented a colorable claim, that the one-year statute of limitations had long since passed, and that this was an impermissible second petition for post-conviction relief. The State further argued that the petition could be summarily dismissed on statute of limitations grounds and that a hearing was not required.

In response to the State's argument that this was a second petition for post-conviction relief, the post-conviction court stated, "The only thing that cause[d it] any pause at all [was] that what [the Petitioner previously] filed he did not style as a petition for post-conviction relief. He filed a court request[, which the court] treated it as a petition for post-conviction relief." The post-conviction court then indicated that it would hear from the Petitioner "as to what he says his grounds [were] for why the statute of limitations should be tolled."

The Petitioner then testified. According to the Petitioner, he was offered two different plea agreements for this charge—the first offer was twelve years with the requirement that he register as a sex offender, and the other an offer of six years with twenty years of community corrections but no requirement that he register as a sex offender. The Petitioner said that he accepted the second offer and was sentenced on September 14, 2012.

Though the Petitioner believed he would not have to register, about "two days" to "a week" after sentencing, Investigator Postel approached him and informed him that he did indeed have to register. The Petitioner maintained that he "argued with her for a few minutes," but she told him he had to sign the document and to contact his attorney if he had an issue to "work it back out with [c]ourt." The Petitioner felt he had to sign the document, so he did. Thereafter, he sent a request to the court inquiring about the matter, but before he "could get a response back," he was "sent . . . to prison."

The Petitioner confirmed that his attorney told him that he did not have to register as a sex offender under the plea agreement reached. The Petitioner indicated that his attorney spoke with the prosecutor on the Petitioner's case and that his understanding was that they agreed he would not have to register.

The State lodged an objection that the Petitioner could not testify to what the understanding was between his attorney and the prosecutor, but only to what his understanding was. The post-conviction court commented that it was the Petitioner's understanding that "matter[ed]." Post-conviction counsel then said, "And, Your Honor, I know since we are at the evidentiary hearing we have no right to subpoena those witnesses to even be here to present their side." The post-conviction court retorted that it "had told [them] to be here today." And, post-conviction counsel replied, "Well, not for an evidentiary hearing, Your Honor. Because that will be ordered by the [c]ourt to say that there is an evidentiary hearing. So we have no subpoena power until that is . . . . " The post-conviction court then inquired why those witnesses were needed for the purpose of establishing extraordinary circumstances that prevented the Petitioner from timely filing his petition and averred that witnesses' relevance was related to the underlying issues attacking the plea. Post-conviction counsel stated his agreement with the post-conviction court but noted that he was responding to the State's objection.

The post-conviction court indicated that for purposes of the hearing it would assume as true the Petitioner's claim that the Petitioner was told he would not have to register as a sex offender as part of his plea deal. The post-conviction court further commented,

> Now, you can ask this man what was represented to him that constitutes a misrepresentation without having any of the attorneys here. Or you can ask him what the extraordinary circumstances are that prevented him

- 7 -

from filing for six and a half years possibly, but certainly seven years if I just look at the most recently filed.

Questioning of the Petitioner resumed.

The Petitioner was asked what steps he took to pursue his rights once he was informed in 2012 that he was required to register as a sex offender; the Petitioner replied that he tried to contact his attorney, to no avail. He also asserted that in 2013, he wrote the Board of Professional Responsibility about his attorney's failure to communicate with him, as well as writing letters to the trial judge and court clerk's office. The Petitioner averred that he wrote "multiple letters" to his attorney and even had his fiancée try to get a hold of his lawyer, but efforts were unsuccessful.

On cross-examination, the Petitioner acknowledged that he did indeed register as a sex offender with Investigator Postel in September 2012 and that following his release from prison in 2015, he had been monitored. According to the Petitioner, after being released from prison for about four months, he was charged in 2016 with violating the requirements of the sex offender registry. The Petitioner confirmed that he was represented by an attorney in that case and took the case to a jury trial before being found guilty in August 2017.[5] See Sykes, 2018 WL 4960226. Though the Petitioner asserted that he apprised his attorney in that case of the situation with the registry, he admitted that he did not seek post-conviction relief at that time.

Thereafter, the Petitioner acknowledged that he filed his first post-conviction petition in January 2019, claiming that he did not know he was required to register under the terms of his plea agreement and that he had been diligently trying to contact the appropriate parties, although no one would help him. The Petitioner acknowledged the court dismissed that petition and that he was making the same arguments in the present petition.

The post-conviction court first noted that there was voluminous correspondence in the Petitioner's case from over the years and then inquired of the Petitioner if trial counsel had ever "made any misrepresentations to [him] about filing a post-conviction relief petition," to which the Petitioner responded that trial counsel never replied to him at all until recently. The Petitioner then referenced the letter from trial counsel that was attached to the amended petition.

Post-conviction counsel was asked if he had "any other evidentiary proof or even any argument as to what would rise to the level of extraordinary circumstances to toll the

---

[5] Though the transcript from the post-conviction hearing indicates that the Petitioner was found guilty in October, our review of those records reveals that the Petitioner was convicted in August.

statute of limitations?" Post-conviction counsel said that "the only evidence the Petitioner would contemplate" offering was to be able to subpoena trial counsel and present him as a witness, though post-conviction counsel agreed "that most of the correspondence kind of discusse[d] what he would even be able to testify to this [c]ourt." Post-conviction counsel stated that "[t]he only other thing" he had to offer was some case law on "the question that was presented" to the parties at the last hearing.

The post-conviction court remarked that based upon its review of the case law, due process tolling was found in cases where there had been attorney misrepresentations, but that there had been no allegation by the Petitioner that trial counsel "misrepresented anything to him about the post-conviction process," only that trial counsel did not communicate with him. The post-conviction court also noted that whether trial counsel provided ineffective assistance of counsel to the Petitioner involved the underlying merits of the Petitioner's claim, not whether due process should toll the statute of limitations. Post-conviction counsel agreed with the post-conviction court, stating that he had "found no case law that expressly" said that the court must hold an evidentiary hearing or could not summarily dismiss a petition as untimely simply because due process tolling had been alleged in the petition. Post-conviction counsel averred that the case law established "that the necessity for an evidentiary hearing must be determined by viewing as true all well-pleaded allegations of fact and that the Tennessee Post-Conviction Procedure Act contemplates an evidentiary hearing except in those cases where a competently drafted petition conclusively shows that the Petitioner is entitled to no relief."

Post-conviction counsel further stated that the case law distinguished between attorney misrepresentation and attorney negligence, acknowledged that "due process tolling require[d] attorney misrepresentation and not just negligence," and then averred that trial counsel's representation in this case "may have [risen] to misrepresentation." The post-conviction court replied that possibly was true "with respect to whether or not [the Petitioner] had to register with the sex offender registry" but not with regard to "the post-conviction process" because there had not been any representation in that regard at all from trial counsel. Post-conviction counsel acknowledged that there was no evidence that anyone misrepresented to the Petitioner the deadline for seeking post-conviction relief, but noted that trial counsel "simply just abandoned [the] Petitioner and there was no correspondence or reply to [the Petitioner's] correspondence."

The post-conviction court then dismissed the petition as time-barred. Relative to the statute of limitations, the post-conviction court observed that it had not found any case law requiring an evidentiary hearing merely because due process tolling had been alleged, Relative to post-conviction counsel's objecting that he was not given the opportunity to subpoena trial counsel, the post-conviction court commented that the Petitioner had been afforded "an evidentiary hearing today to see what [he] ha[d] to say about what the

extraordinary circumstances would be that prohibited him from" timely filing. The post-conviction court further noted that the Petitioner conceded that there was no communication by trial counsel regarding the post-conviction process, so therefore there was no misrepresentation by trial counsel.

Next, the post-conviction court dismissed the petition as an improper second petition for post-conviction relief. Relative to this ground, the post-conviction court remarked that the Petitioner had filed a previous court request in January of 2019, which the post-conviction court treated as a petition for post-conviction relief, and that it had addressed the Petitioner's claim on the merits in its order dismissing the petition, therein finding no colorable claim and observing that the Petitioner knew as early as September 2012 that he would be required to register as a sex offender. The post-conviction court further stated that the Petitioner could have appealed that order of dismissal or filed a motion to reopen his prior petition, but he did not. Following entry of an order of dismissal, the Petitioner timely appealed.

ANALYSIS

On appeal, the Petitioner argues that due process requires tolling of the one-year limitations period, that he should have been given an evidentiary hearing to present additional proof of tolling, and that his first petition was not resolved on the merits. The State responds that the post-conviction court properly dismissed the petition summarily.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A petition for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final." Tenn. Code Ann. § 40-30-102(a). Here, it was undisputed that the one-year statute of limitations expired years before the petition was filed.

"[T]he right to file a petition for post-conviction relief . . . shall be extinguished upon the expiration of the limitations period." Tenn. Code Ann. § 40-30-102(a). "If it plainly appears from the face of the petition, any annexed exhibits or the prior proceedings in the case that the petition was not filed . . . within the time set forth in the statute of limitations, . . . the judge shall enter an order dismissing the petition." Tenn. Code Ann. § 40-30-106(b). The Post-Conviction Procedure Act is explicit that the one-year statute of limitations "shall not be tolled for any reasons, including any tolling or saving provision otherwise available at law or equity." Tenn. Code Ann. § 40-30-102(a).

The Post-Conviction Procedure Act provides for only three narrow factual circumstances in which the statute of limitations may be tolled. See Tenn. Code Ann. § 40-30-102(b). The Petitioner concedes, and we agree, that the Petitioner does not meet any of the three narrow circumstances enumerated in statutory law.

However, because "the General Assembly may not enact laws that conflict with the Constitution of Tennessee or the Constitution of the United States," our supreme court has recognized other exceptions that can toll the running of the one-year statute of limitations. Whitehead v. State, 402 S.W.3d 615, 622-23 (Tenn. 2013). "Both [our supreme court] and the United States Supreme Court have recognized that fundamental due process requires that, once the legislature provides prisoners with a method for obtaining post-conviction relief, prisoners must be afforded an opportunity to seek this relief 'at a meaningful time and in a meaningful manner.'" Id. (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)).

In Whitehead, our supreme court laid out three situations in which due process could toll of the statute of limitations. 402 S.W.3d at 623-624. The first of the three circumstances involves claims for relief that arise after the statute of limitations has expired. Id. at 623. The second due process basis for tolling the statute of limitations involves prisoners whose mental incompetence prevents them from complying with the statute's deadline. Id. at 624. The third exception occurs when attorney misconduct or abandonment prevented the petitioner from filing a post-conviction petition within the statute of limitations. Id. To succeed upon such a claim, a petitioner must show "(1) that he or she had been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing." Id. at 631 (citing Holland v. Florida, 560 U.S. 631, 648-49 (2010)). Our supreme court has held that the Whitehead-Holland test "applies to all due process tolling claims, not just those that concern alleged attorney misconduct[,]" and has utilized that standard in analyzing a claim for relief that arose after the statute of limitations had expired. Bush v. State, 428 S.W.3d 1, 21-23 (Tenn. 2014).

The standard for pursuing one's rights diligently "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts [to pursue his or her claim]." Whitehead, 402 S.W.3d at 631 (quoting Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002)) (internal quotation marks omitted) (brackets in original). However, equitable tolling of the statute is a remedy that should be utilized sparingly in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period and gross injustice would result." Id. at 631-32 (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). As a result, "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." Id. at 632 (citations omitted).

- 11 -

The petitioner bears the burden of pleading and proving that the statute of limitations should be tolled on due process grounds. See Tenn. Sup. Ct. R. 28, § 5(F)(4) ("A petition may be dismissed without a hearing if it . . . does not state the reasons that the claim is not barred by the statute of limitations."); see also State v. Nix, 40 S.W.3d 459, 464-65 (Tenn. 2001). "Issues regarding whether due process require[s] the tolling of the post-conviction statute of limitations are mixed questions of law and fact and are, therefore, subject to de novo review." Whitehead, 402 S.W.3d at 621.

On appeal, the Petitioner again cites Foley, 2016 WL 245857, as support for his claim that due process tolling is required here. In Foley, the petitioner was specifically advised that he was not required to register at the time of his February 28, 2002 guilty plea to facilitation of especially aggravated kidnapping. 2016 WL 245857, at *1-2. Prior to the petitioner's release from prison in the fall of 2011, the petitioner was erroneously informed that he was currently obligated to register as a sex offender. Id. at *2. Though the petitioner was subsequently charged with a violation of the sex offender registry, he hired an attorney and successfully defended that charge, which was dismissed in April 2012. Id. Thereafter, on July 1, 2012, the Sex Offender Registration Act ("the Act") was subsequently amended to require registration for the petitioner's offense. Id. On June 3, 2014, and again on August 6, 2014, the petitioner was indicted on two charges of the violating the registry. Id. at *3. Finally, in October 2014, the petitioner entered "no contest" pleas to two charges of violating the registry. Id. at *2.

The Foley petitioner, on January 7, 2015, filed an untimely petition for post-conviction relief, alleging that the statute of limitations should be tolled because he did not learn until well after its expiration that the State was seeking to enforce the provisions of the registry against him, contrary to the terms of his plea agreement. 2016 WL 245857, at *2-3. The petitioner therein alleged that the State breached a material term of his plea agreement and that the application of the sex offender registry to him violated his right to due process. Id. at *3. Thereafter, the post-conviction court dismissed the petition as time-barred, finding no basis for due process tolling. Id. at *3-4.

On appeal, this court held that the Foley petitioner's claim for relief did not arise until "the State sought to apply the [A]ct's provisions to the Petitioner . . . possibly breach[ing] a 'material term' of the plea agreement [and] triggering the Petitioner's responsibility to pursue his rights diligently." Foley, 2016 WL 245857, at *7. Based on the allegations in the petition, this court concluded that the petitioner's claim was later-arising and that the petitioner had been diligently pursuing his rights by seeking dismissal of the first violation in April 2012 and by filing his post-conviction petition within seven months of his 2014 indictments. Id. at *8. In so holding, this court stated the following:

> We find this to be one of those rare unconscionable cases that cries
> out for due process tolling. However, we note that our determination that the

[p]etitioner is entitled to a hearing is not to be read as indicative of the merit of the [p]etitioner's claims, which will be analyzed by the post-conviction court. We also guide the lower court to make the appropriate findings in ruling on the petition. Accordingly, this case is reversed, and the [p]etitioner must receive an evidentiary hearing in which to present proof as to his post-conviction grounds for relief.

Id. (internal citations omitted).

Relying on Foley, the Petitioner asserts that his claim is "later-arising" as he "was not aware that he would be required to register as a sex offender and maintain that registration until he was subsequently arrested for a violation of the sex offender registry" and that the "triggering point" for him to pursue his rights diligently "did not occur until his subsequent registry violation." According to the Petitioner, he has diligently pursued his rights since that time by repeatedly sending letters to trial counsel and the court clerk's office "requesting his case information and guidance." The Petitioner continues, "[Trial counsel] never contacted [him] and essentially abandoned him. Although the [court clerk's office] initially responded to [him], the responses were simply placed in his file and never actually delivered or given to [him] until he requested his entire case file after a subsequent arrest for a registry violation."

The circumstances present in Foley are not present in this case even if we assume as true, as did the post-conviction court, that the Petitioner was not advised about the registry during the plea agreement process. First, this case does not involve changes to the Act; the Petitioner's offense was included as a required offense for registration at the time of the Petitioner's plea. See Tenn. Code Ann. § 40-39-202(20)(xvi). The Petitioner acknowledged that Investigator Postel required him to register in September 2012; he even sent a general request form to the court clerk's office indicating such. The Petitioner further acknowledged that following his release from prison in 2015, he had been monitored under the sex offender registry and that he was charged in 2016 with violating the requirements of the registry. Moreover, the Petitioner was represented by an attorney in the violation case and took the case to a jury trial before being found guilty in August 2017. Though the Petitioner asserted that he apprised his attorney in that case of the situation with the registry, he admitted that he did not seek post-conviction relief at that time.

In addition to being convicted of violating the registry in August 2017, the Petitioner admitted that he received all the documentation from his file from the court clerk's office in 2016. According to the Petitioner's own account, he had not heard from trial counsel in almost four years at that time. Even if we were to use any of the various dates offered by the Petitioner and not the September 2012 date used by the post-conviction court, the Petitioner's petition would still be time-barred. The Petitioner made no allegation that any misrepresentations by trial counsel led him to forego filing his post-conviction petition

until almost seven years after the statute of limitations expired, his allegations concerning only the lack of communication. Though the Petitioner alleged that he continued to try to contact trial counsel and the court clerk's office, he entered no evidence of such other than his own testimony. The Petitioner did not file his first pro se petition for post-conviction relief until January 22, 2019, and this present petition was not filed until June of that year. This court "has consistently held that a petitioner's personal ignorance of post-conviction procedures, even when alleged to stem from an attorney's negligent failure to render advice to the petitioner, does not toll the running of the statute of limitations." Jarvis Taylor v. State, No. W2014-00683-CCA-R3-PC, 2014 WL 6491076, at *3 (Tenn. Crim. App. Nov. 20, 2014) (internal quotation marks and citation omitted); see State v. Phillips, 904 S.W.2d 123, 124 (Tenn. Crim. App. 1995); Frederick D. Deberry v. State, No. W2015-00951-CCA-R3-PC, 2016 WL 369390, at *4 (Tenn. Crim. App. Jan. 29, 2016). Contrary to the Petitioner's assertions, we cannot say that he has diligently pursed his rights. This is not one of those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period and gross injustice would result. Based upon the foregoing, we conclude that the post-conviction court correctly determined that the Petitioner failed to establish a basis for tolling the statute of limitations.

The Petitioner also argues that he should have been allowed another evidentiary hearing allowing him to subpoena witnesses and present evidence regarding due process tolling. However, the Petitioner offers no inclination of who these witnesses are or what this further evidence would be and how it would inure to his benefit. At the post-conviction hearing, the only witness that post-conviction counsel stated that he wished to call was trial counsel, but post-conviction counsel also conceded at the hearing that trial counsel would not be able to offer much more information than was already contained in the file. Finally, the post-conviction court allowed the Petitioner to testify and for counsel to make argument. Because the Petitioner failed to meet his burden of pleading and proving that the statute of limitations should be tolled on due process grounds, he was not entitled to a further evidentiary hearing. See Tenn. Sup. Ct. R. 28, § 5(F)(4); Nix, 40 S.W.3d at 464-65. Accordingly, summary dismissal was proper.

The Petitioner also argues that the post-conviction court erred by dismissing his petition as an impermissible second petition for relief. See Tenn. Code Ann. § 40-30-102(c). Initially, we agree with the State that it is not necessary to reach this issue since the June 2019 petition is untimely and due process does not require tolling. Moreover, we agree with the State that the appellate record is inadequate for our review. Neither the January 2019 court request, nor the court's order dismissing that request are included in the record on appeal. It is an appellant's responsibility to prepare an adequate record for this court to address the issues. State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993).

## CONCLUSION

In accordance with the foregoing, the judgment of the post-conviction court summarily dismissing the petition is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE