IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2022

## BRYAN SHAWN BLEVINS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Carter County**
**No. 25993     Stacy L. Street, Judge**

_____

## No. E2021-01312-CCA-R3-PC

_____

The Petitioner, Bryan Shawn Blevins, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance, which rendered his guilty pleas unknowing and involuntary. The State argues that the post-conviction court erred in denying the State's motion to summarily dismiss the petition as time-barred. Based on our review, we conclude that the Petitioner failed to show that the one-year statute of limitations should be tolled on due process grounds. Thus, the Petitioner's post-conviction claims are barred by the statute of limitations. We, therefore, reverse the post-conviction court's denial of the State's motion to dismiss the petition as untimely.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Lawrence Scott Shults, Johnson City, Tennessee, for the appellant, Bryan Shawn Blevins.

Herbert H. Slatery III, Attorney General and Reporter; Hannah-Catherine Lackey, Assistant Attorney General; Kenneth C. Baldwin, District Attorney General; and Ryan S. Curtis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On May 30, 2019, the Petitioner entered nolo contendere pleas to one count of aggravated sexual battery, two counts of violation of the sexual offender registry and one count of violation of sexual offender restrictions. The trial court sentenced him to an effective term of nine years in the Tennessee Department of Correction.

On October 20, 2020, the Petitioner filed an untimely pro se petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. On March 15, 2021, the State responded with a motion to dismiss based on the petition's having been filed beyond the one-year-statute of limitations. On June 1, 2021, the Petitioner, through appointed post-conviction counsel, filed both an answer to the State's motion to dismiss and an amended petition for post-conviction relief. In the answer to the State's motion to dismiss, the Petitioner asserted that the statute of limitations should be tolled on due process grounds "in light of complications due to Covid-19 and Petitioner's unique housing with [the Tennessee Department of Correction]." Specifically, the Petitioner asserted that he was in protective custody, was moved on more than one occasion, and had limited access to the law library due to his protective custody and Covid-19 restrictions. In the amended petition, the Petitioner alleged that his trial counsel "either willfully ignored or otherwise failed to act on [the Petitioner's] request for a mental evaluation to establish" a defense of diminished capacity. The Petitioner asserted that, were it not for trial counsel's failure to explore a diminished capacity defense, he would not have entered into his plea agreement but instead would have proceeded to trial.

At the July 19, 2021 evidentiary hearing, the Petitioner first offered testimony to explain the late filing of his petition, testifying that he was transferred in June 2019, to the Bledsoe Correctional Complex and placed in protective custody, where he was not allowed access to "legal materials except by way of request." He said he filed requests for access to legal materials but his requests were denied. He stated that he was transferred to Northwest Correctional Complex later that year. After experiencing chest pains due to a heart condition, he was then transferred to the DeBerry special needs facility in Nashville, where he was placed "in transit," a status in which he did not have access to "anything except by way of request." While there, he was sent to Centennial Hospital to have two stents placed in his heart. During his period of hospitalization, he was physically incapable of accessing legal materials.

The Petitioner testified that he was then transferred back to Northwest, where he was again placed in protective custody with limited access to legal materials. At about the same time, the global pandemic began and the prison was placed on lockdown, with inmates confined to their cells, classes cancelled and the law library closed. The Petitioner testified that, had he been allowed access to the legal materials he required, his petition would have been timely.

On cross-examination, the Petitioner acknowledged that he did not have any proof other than his own testimony of the written requests he made at the various facilities for access to their law libraries. He testified that he spent two weeks in Centennial Hospital. He acknowledged that there was a law library at the special needs facility where he was housed before and after his two-week hospitalization for the heart stents. He also

acknowledged that on July 26, 2020, which was prior to the August 19, 2020 expiration of the one-year statute of limitations in his case, he had sent a letter to the trial court clerk in which he stated that he was searching for evidence of ineffective assistance of counsel.

At the conclusion of the proof on the timeliness of the petition, the post-conviction court denied the State's motion to dismiss, finding that the statute of limitations should be tolled due to the pandemic, which had altered "the entire operating procedure of the Department of Correction[.]" The post-conviction court's ruling states in pertinent part:

> However, I'm going to deny the motion to dismiss the petition and find that the statute of limitations was tolled for the distinct reason that even though each place that he was sent had a law library in the year 2020, because of the pandemic the entire operating procedure of the Department of Correction[] was altered as we know. There were no transfers; there were no transports. So even though there's no proof in the record that he was denied access to the law library, the Court can - - is going to err on the side of caution and say it was two months late being filed, but that could have been explained by the fact that the Department of Correction[] - - the procedures have - - have and were altered in the year 2020.

During his presentation of evidence in support of his post-conviction claims, the Petitioner testified that his trial counsel did not review the case with him, did not allow him to see the motion for discovery, and did not fully explain "the situation" to him. Although he signed releases for trial counsel to obtain his medical records, she did not review those records with him. She also failed to have him undergo a psychiatric evaluation, despite his having informed her that he wanted one.

The Petitioner testified that he subsequently learned that one of his psychotropic medications, Rexulti, caused "uncontrollable thoughts and actions, and sexually, physically, just all kinds of different actions that were outside the usual norm for a normal person." He said he first began taking the drug in 2017 or 2018 as part of a pharmaceutical trial. He identified a March 21, 2019 "E&M Progress Report" from Frontier Health, subsequently admitted as an exhibit, that reflected when he was first placed on the medication.

The Petitioner testified that he was admitted on April 23, 2018, to "Woodridge" "for increasingly erratic behavior and exhibiting violent behavior" and received a final diagnosis of "Bipolar Disorder Type 1, post-traumatic stress disorder, and sleep disorder." He identified his psychiatric discharge summary from the facility, which was admitted as an exhibit. The Petitioner testified that he informed his physicians that he was having

- 3 -

trouble controlling his actions. He believed that he also informed trial counsel of the same thing. However, to his knowledge, trial counsel never pursued that claim.

On cross-examination, the Petitioner acknowledged that trial counsel requested and received his medical records. He claimed that he never saw any of the State's evidence against him but acknowledged that he informed the trial court during the plea colloquy that he had. He said he was on psychotropic medication at the time he entered his pleas and did not know exactly what kind of side effects he might have been experiencing at the time. He acknowledged that his medical records reflected that he reported more than once that he felt better impulse control while taking Rexulti. He explained that "psychotropic medications can work for a period of time, and then . . . they get built up in your system and your system becomes basically immune to those medications." He said he never told trial counsel that Rexulti caused him impulse control problems because he was not aware at the time that it did.

The Petitioner expressed his opinion that trial counsel should have investigated a potential diminished capacity defense but acknowledged that he had maintained his innocence to trial counsel throughout by insisting that the act of which he was accused never took place. He further acknowledged that he wrote letters to the public defender's office and to the district attorney in which he discussed pleading guilty to a lesser-included offense, that he had entered guilty pleas in two previous cases, and that he answered appropriately the trial court's questions during the plea colloquy in the instant case by indicating that he understood the plea agreement and was entering his pleas knowingly, intelligently, and voluntarily. The various letters written by the Petitioner, as well as the Frontier Health progress notes that reflected the Petitioner's having reported better impulse control with the use of Rexulti, were admitted as exhibits to the hearing.

On redirect examination, the Petitioner identified a Rexulti drug insert, admitted as an exhibit, that listed potential side effects of the medication as "[u]ncontrollable and excessive urges" with examples given of "gambling, binge eating, shopping, having sex[.]" On re-cross examination, the Petitioner testified that he had a mental evaluation performed in 1997 or 1998 in connection with charges in Washington County. He said he was not aware of trial counsel's having investigated that mental evaluation but would not be surprised if she did, agreeing that she was thorough in her review of his records.

Trial counsel testified that she obtained and reviewed the Petitioner's medical and mental health records. She identified the written requests she had submitted, which were admitted as a collective exhibit. She said she did not review the records with a psychiatrist. She stated that she attempted to obtain the Petitioner's medication records from CVS Pharmacy but was unsuccessful. She explained that CVS Pharmacy typically sends record requests to a "national clearinghouse" and that it was not unusual to have to follow up on

- 4 -

the request before receiving the records. She agreed that, had she obtained the CVS records, she could have compared the medications dispensed with the medications prescribed but disagreed that the CVS records would have included potential side effects of the medication. When asked if she would have investigated the potential side effects had she obtained the list of medications, she responded "[n]ot unless . . . [she] had some reason to."

Trial counsel testified that she did not consult with a psychologist or psychiatrist and did not request a mental evaluation because she did not believe she had a good faith reason for doing so. She said she was aware that the Petitioner had been diagnosed with bipolar disorder and was aware that he was on three or four mental health medications but his mental health problems did not appear to her to be that severe. She acknowledged that the Petitioner's wife expressed her belief that the Petitioner's medication caused his behavior. On cross-examination, trial counsel testified that the Petitioner wrote her letters in which he discussed lesser-included offenses and potential plea bargains, demonstrating his familiarity with the criminal court system. Trial counsel recalled that she brought copies of discovery to the Petitioner during their first meeting and reviewed with him the State's evidence, which included the child victim's recorded interview at the Children's Advocacy Center, the statement of the victim's mother, the statement of the Petitioner's wife, a videotape of the Petitioner's arrest, "multiple photographs," and a recorded jail telephone call between the Petitioner and his wife.

Trial counsel testified that she saw nothing in the Petitioner's demeanor during his arrest or afterwards to indicate that he was hallucinating or detached from reality. To the contrary, the Petitioner, although obviously aggravated at being arrested, appeared "relatively calm" and with "the wherewithal to know what to say and what not to say." She said the Petitioner was unequivocal throughout her representation that he had not committed the crimes and there was nothing in his mental health records to indicate he was experiencing problems with his medication. She stated that she thoroughly reviewed his mental health records and repeated that she had no good faith reason to request a mental evaluation. According to trial counsel, the Petitioner reviewed the plea agreement, indicated that he understood what he was doing and what the plea agreement entailed, and never wavered in his decision to enter his pleas.

On October 7, 2021, the post-conviction court entered an order denying the petition for post-conviction relief on the basis that the Petitioner failed to meet his burden of demonstrating by clear and convincing evidence that he was denied the effective assistance of counsel or that his guilty pleas were unknowing and involuntary.

## ANALYSIS

On appeal, the Petitioner contends that the post-conviction court erred in denying his petition, arguing that he presented proof that trial counsel was deficient for not investigating and raising a defense of diminished capacity and that he would not have entered his pleas were it not for trial counsel's deficiency. The State first argues that the post-conviction court erred in finding that due process considerations tolled the one-year statute of limitations. The State further argues that the Petitioner failed to show that he was denied the effective assistance of counsel or that his pleas were unknowing and involuntary.

Post-conviction relief is warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. §40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove the factual allegations in support of his or her grounds for relief by clear and convincing evidence. Id. §40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law, however, are subject to *de novo* review with no presumption of correctness. *Id.* at 457.

Under the Post-Conviction Procedure Act, a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred." Tenn. Code Ann. § 40-30-102(a).

The post-conviction statute contains a specific anti-tolling provision:

> The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

*Id.*

Subsection (b) of the statute sets forth the three narrow exceptions under which an untimely petition may be considered, none of which are applicable here. However, in addition to the three narrow exceptions listed in the statute, principles of due process may allow for the tolling of the statute of limitations in limited circumstances. *See Seals v.*

- 6 -

*State,* 23 S.W.3d 272, 279 (Tenn. 2000) ("[W]e conclude that while the one-year statute of limitations set forth in Tenn. Code Ann. § 40-30-202(a) does not violate due process on its face, application of the statute must not deny a petitioner a reasonable opportunity to raise a claim in a meaningful time and manner."); *see also Williams v. State,* 44 S.W.3d 464, 468 (Tenn. 2001); *Burford v. State,* 845 S.W.2d 204, 208 (Tenn. 1992).

A post-conviction petitioner is entitled to due process tolling of the statute of limitations upon a showing "(1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing." *Bush v. State*, 428 S.W.3d 1, 22 (Tenn. 2014) (citing *Whitehead*, 402 S.W.3d at 631). To pursue one's rights diligently "'does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts [to pursue his or her claim].'" *Id.* (quoting *Whitehead,* 402 S.W.3d at 631). However, due process tolling "'must be reserved for those rare instances where - - due to circumstances external to the party's own conduct- - it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Id.* (quoting *Whitehead*, 402 S.W.3d at 631-32). "The question of whether the post-conviction statute of limitations should be tolled is a mixed question of law and fact that is . . . subject to de novo review." *Id.* at 16 (citing *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011)); *Whitehead*, 402 S.W.3d at 621.

We agree with the State that the Petitioner failed to present sufficient facts to justify due process tolling of the statute of limitations. Other than his own testimony, the Petitioner offered no proof that his written requests for access to legal materials and/or the law library was denied, either before or after the pandemic. The proof shows that the Petitioner was still able to send mail and was aware of the possibility of asserting a claim of ineffective assistance of counsel before the expiration of the one-year statute of limitations. The Petitioner has simply not shown that he was pursuing his rights diligently or that some "extraordinary circumstance" beyond his control prevented him from timely filing his petition. *See e.g., Darrell Wren v. State*, No. W2021-00485-CCA-R3-PC, 2022 WL 1499490, at *3 (Tenn. Crim. App. May 11, 2022)(rejecting petitioner's claim that prison operating procedures resulting from pandemic concerns warranted due process tolling of the statute of limitations); *Markist Cole v. State*, No. W2021-00973-CCA-R3-PC, 2022 WL 1077313, at *3 (Tenn. Crim. App. Apr. 11, 2022)(affirming dismissal of post-conviction petition based on untimeliness of the petition and petitioner's failure to establish that prison changes due to pandemic prevented him from timely filing his petition). We, therefore, reverse the post-conviction court's denial of the State's motion to dismiss the petition as untimely.

## CONCLUSION

Based on our review, we conclude that the petition for post-conviction relief was untimely and the Petitioner has not demonstrated that the statute of limitations should be tolled on due process grounds.  Accordingly, we reverse the post-conviction court's denial of the State's motion for summary dismissal of the petition.

_____
JOHN W. CAMPBELL, SR., JUDGE